## MULLEN *v.* SIMMONS, SHERIFF OF JOHNSTON COUNTY.

### ERROR TO THE SUPREME COURT OF THE STATE OF OKLAHOMA.

No. 263.  Submitted May 11, 1914.—Decided June 8, 1914.

The policy of Congress in regard to restrictions upon alienation of allotments has been to protect Indians against their own improvidence, whether shown by acts of commission or omission, contracts or torts.

The prohibition, contained in § 15 of the act of July 1, 1902, as to affecting or encumbering allotments made under the act by deeds, debts or obligations contracted prior to the termination of period of restriction on alienation, applies to a judgment entered against an allottee, whether based on a tort or on a contract.

A tort may be a breach of a mere legal duty or a consequence of negligent conduct, and a confessed judgment based on a prearranged tort might become an easy means of circumventing the policy of the statutes restricting alienation of Indian allotments if alienation could be effected by levy and sale under such a judgment.

33 Oklahoma, 184, reversed.

THE facts, which involve the construction of the provisions of the act of July 1, 1902, affecting alienation of

allottee lands, and the effect of judgments against the allottee, are stated in the opinion.

*Mr. S. T. Bledsoe* and *Mr. J. R. Cottingham* for plaintiff in error:

The lands involved were not subject to seizure and sale on execution. *Hamilton* v. *Brown*, 31 Oklahoma, 213; *S. C.*, 120 Pac. Rep. 950; *Holden* v. *Garrett*, 23 Kansas, 98; *Koheler* v. *Ball*, 2 Kansas, 160; *Mullen* v. *United States*, 224 U. S. 448.

It was not the purpose of Congress to permit a lien to attach to lands as to which alienation is prohibited, to become effective when the lands are alienable and operate to deprive the allottee of any of the benefit of receiving the lands in allotment. *Choate* v. *Trapp*, 224 U. S. 665; *Goat* v. *United States*, 224 U. S. 458; *Keel* v. *Ingersoll*, 27 Oklahoma, 117; *S. C.*, 111 Pac. Rep. 214; *Krause* v. *Means*, 12 Kansas, 335; *Maynes* v. *Veale*, 20 Kansas, 374; *Farrington* v. *Wilson*, 29 Wisconsin, 383; *Landrum* v. *Graham*, 22 Oklahoma, 458; *S. C.*, 98 Pac. Rep. 432.

Nor was it the purpose in the extension of the Oklahoma statutes over that part of Oklahoma which formerly constituted the Indian Territory to reinstate dormant judgment liens. Chapter 199, 35 Stat. 312; Bledsoe's Indian Land Laws, c. 53.

The effect of a statute purporting to fix a lien upon lands held subject to restrictions on alienation under the laws of the United States undoubtedly presents a Federal question.

If a lien existed by virtue of a judgment, but subject to existing restrictions upon alienation, Congress clearly had authority to extend or enlarge such restrictions as against such character of lien. *Tiger* v. *Western Investment Co.*, 221 U. S. 286.

*Mr. John E. Dolman* and *Mr. L. S. Dolman* for defendants in error:

The Oklahoma courts gave full effect to the words in § 15 of the act of 1902 providing that the lands should not be sold except as therein provided. That entire section refers exclusively to voluntary deeds,\ debts and contractual obligations, and has no reference whatever to a judgment for damages for a tort. *Brun* v. *Mann*, 151 Fed. Rep. 145.

It is the intention expressed in the statute and that alone to which the courts may lawfully give effect; the act must be held to mean what it clearly expresses. *Wabash* v. *United States*, 178 Fed. Rep. 5, 12; *United States* v. *Ninety-Nine Diamonds*, 139 Fed. Rep. 961; *United States* v. *Alamogordo Co.*, 202 Fed. Rep. 700, 706. *Mullen* v. *United States*, 224 U. S. 448, does not apply.

Under § 15 of the act of 1902, and under the laws of Oklahoma as construed by the highest court of that State in its decision in this case, the judgment of the interpleader became a lien on the allotment when the allottee acquired the same, and this court is bound by the decision of the state court as to the validity and construction of its lien statute under the pleadings in this case. *United States* v. *Morrison*, 4 Pet. 124; *Massingill* v. *Downs*, 7 How. 760; *Taylor* v. *Thomson*, 5 Pet. 358; *Bank* v. *Longworth,* Fed. Cas. No. 923; *United States* v. *Eisenbeis*, 88 Fed. Rep. 4; *Fidelity Ins. Co.* v. *Shenandoah Iron Co.*, 42 Fed. Rep. 372; *Re Grissler*, 136 Fed. Rep. 754; *The Winnebago*, 141 Fed. Rep. 945; *S. C.*, 200 U. S. 616; *Morgan* v. *First National Bank*, 145 Fed. Rep. 466; *Geo. A. Shaw & Co.* v. *Cleveland Ry. Co.*, 173 Fed. Rep. 746; *Livingston* v. *Moore*, 7 Pet. 469; *Galpin* v. *Page*, 18 Wall. 350.

The lien of the interpleader's judgment having legally attached to the allotment, it became a vested right of property of which the interpleader could not be deprived by any subsequent act of Congress, without violating the Fifth Amendment. *Mullen* v. *United States,* 224 U. S. 448, 457.

Mr. Justice McKenna delivered the opinion of the court.

Plaintiff in error brought suit in the District Court in and for the Seventh Judicial District, Johnston County, State of Oklahoma, to restrain defendant in error, who was defendant in the trial court, from selling under execution issued upon a judgment obtained against one F. A. Bonner certain lands, which are described, belonging to plaintiff in error. He was plaintiff in the action, and we will so refer to him. Plaintiff, it is alleged, derived his title from F. A. Bonner by warranty deed dated October 17, 1908, Bonner then having unrestricted right to sell. Bonner is a member and citizen of the Choctaw Tribe of Indians, of one-sixteenth degree of Indian blood, and that the lands described constitute his allotment as a member and citizen of such tribe; that the judgment upon which the execution was issued was rendered and the debt evidenced by it contracted more than five years prior to the issuance of the execution and at a time when the lands were inalienable, and that under the laws of the United States and the treaties between the Chickasaw and Choctaw Nations and the United States the lands were exempt from the operation of the judgment. That defendant threatens to sell the lands and that a sale thereof and the deed which may be executed will cast a cloud upon plaintiff's title. A restraining order was issued. Defendant in his answer alleged that when the restraining order was served upon him he was in possession of the lands under the execution which he set up as a defense. He admitted the other allegations of the plaintiff and alleged that E. F. Ham et al., plaintiffs in the judgment, were necessary parties. He prayed a dissolution of the restraining order and that the suit be dismissed.

Subsequently Millord F. Ham and others filed "their interplea in said cause" and asked to be made defendants.

For answer to plaintiff's petition they alleged the following: They recovered the judgment in controversy against Frank Bonner for the sum of $2,966.66²/₃ on January 31, 1901, as damages for the killing of the husband of one of the interpleaders and the father of the others, upon which executions were issued but all returned unsatisfied, and finally on September 29, 1908, the interpleaders caused the execution in controversy to be issued and levied upon the lands described in plaintiff's petition.   On February 23, 1906, Bonner became the owner of the lands by allotment of the same as an Indian and the judgment thereupon became a lien upon the lands.   Subsequently that part of the Indian Territory and the Southern District where the lands are located became a part of what is now Johnston County, and the judgment is still a lien upon the lands and was a lien at the time of the purchase by Mullen who, at the time of the alleged conveyance to him, had full knowledge and notice of the judgment and knew that an execution had been issued and levied upon the lands and that, therefore, he is not an innocent purchaser of them but took them subject to the judgment.

Mullen demurred to the answer of Simmons and to that of the interpleaders upon the grounds (1) that they did not constitute a defense.   (2) They failed to show that the execution was a lien upon the lands, failed to show that the lands were seized by the sheriff prior to the deed to plaintiff, and failed to show that a lien attached by virtue of the execution.   (3) The lands, having been taken in allotment by Bonner, were not subject under the law to any debt, deed, contract or obligation of any character made prior to the time at which the lands could be alienated by the allottee; that the judgment was recovered against him more than five years before the lands were alienable and that the lands were not subject to it or to the execution issued upon it.

The judgment of the court was that it "doth overrule

plaintiff's general demurrer and his first special demurrer . . . and doth sustain plaintiff's second special demurrer . . . and the interpleaders and the defendants elect to stand upon their answer and interplea herein, refuse to plead further and the court finds for the plaintiff and that he is entitled to the relief prayed for in his petition. . . . ." And it was adjudged that the defendant Simmons, as sheriff of Johnston County, and his deputies, and the interpleaders be enjoined and restrained forever from issuing or causing to be issued any execution or other process upon the judgment rendered against Frank Bonner in favor of the interpleaders, and from levying the same upon the lands described.

The Supreme Court of the State reversed the judgment, deciding "that the lien of interpleader's judgment attached to the allotment as soon as it came into being; that plaintiff took the land subject thereto, and that the same should be enforced and said land sold to satisfy the same, and that, too, notwithstanding the provisions of the 15th section of the act of July 1, 1902, which has no material bearing on the question." 33 Oklahoma, 184, 188.

The section referred to is as follows: "Lands allotted to members and freedmen shall not be affected or encumbered by any deed, debt or obligation of any character contracted prior to the time at which said land may be alienated under this Act, nor shall said lands be sold except as herein provided." c. 1362, 32 Stat. 641, 642.

The Supreme Court of Oklahoma in deciding that this provision did not apply distinguished between the obligations resulting from an Indian's wrongful conduct and the obligations resulting from his contracts, saying, p. 187, "A judgment in damages for tort is not a 'debt contracted'" within the contemplation of § 15. In other words, the court was of the view that the tort retained its identity, though merged in the judgment. However, we need not enter into the controversy of the cases and the

books as to whether a judgment is a contract. Passing such considerations, and regarding the policy of § 15 and its language, we are unable to concur with the Supreme Court of Oklahoma.

This court said, in *Starr* v. *Long Jim*, 227 U. S. 613, 625, that the title to lands allotted to Indians was "retained by the United States for reasons of public policy, and in order to protect the Indians against their own improvidence." It was held, applying the principle, that a warranty deed made by Long Jim at a time when he did not have the power of alienation "was in the very teeth of the policy of the law, and could not operate as a conveyance, either by its primary force or by way of estoppel" after he had received a patent for the land.

The principle was applied again in *Franklin* v. *Lynch*, 233 U. S. 269, and its strict character enforced against the deed of a white woman who acquired title in an Indian right. It is true, in these cases the act of the Indian was voluntary or contractual, and, it is contended, a different effect can be ascribed to the wrongs done by an Indian and that in reparation or retribution of them the state law may subject his inalienable lands—inalienable by the National law—to alienation. The consequence of the contention repels its acceptance. Torts are of variable degree. In the present case that counted on reached, perhaps, the degree of a crime, but a tort may be a breach of a mere legal duty, a consequence of negligent conduct. The policy of the law is, as we have said, to protect the Indians against their improvidence, and improvidence may affect all of their acts, those of commission and omission, contracts and torts. And we think § 15 of the act of July 1, 1902, was purposely made broadly protective, broadly preclusive of alienation by any conduct of the Indian, and not only its policy but its language distinguishes it from the statute passed on in *Brun* v. *Mann*, 151 Fed. Rep. 145. Its language is that "lands allotted  .  .  .

shall not be *affected* or encumbered by any deed, debt or *obligation* of any *character contracted* prior to the time at which" the lands may be alienated, "nor shall said lands be sold except" as in the act provided. The prohibition then is that the lands shall not be "affected . . . by any obligation of any character," and, as we have seen, an obligation may arise from a tort as well as from a contract, from a breach of duty or the violation of a right. *Exchange Bank* v. *Ford,* 7 Colorado, 314, 316. If this were not so, a prearranged tort and a judgment confessed would become an easy means of circumventing the policy of the law.

*Judgment reversed and case remanded for further proceedings not inconsistent with this opinion.*

MR. JUSTICE DAY dissents.