Note.—See under (1) 35 Cyc. p. 404; anno. 14 L. R. A. 492, 35 L. R. A. (N. S.) 288, et seq.; 24 R. C. L. pp. 171-173; 4 R. C. L. Supp. p. 1530, 5 R. C. L. Supp. p. 1275. (2) 35 Cyc. p. 404.

---

### DAWES et al. v. BRADY et al.

No. 13764—Opinion Filed Oct. 27, 1925.

1. **Indians — Allotments — Administrator's Sale in Violation of Federal Statute— Administrator's Deed not Color of Title as Against Indian Minor Heir.**

The Act of May 27, 1908, provides that allotted lands shall not be subjected or held liable to any form of personal claim or demand against the allottees, arising or existing prior to the removal of restrictions. Held, that an administrator's sale of an Indian citizen's allotment for debts is squarely in the teeth of the foregoing provision, and confers no rights on the purchaser. Held, further, that in such case the administrator's deed cannot be deemed color of title against an Indian minor heir so as to bar the claim of such heir by a state statute of limitations.

2. **Same—Action by Heir to Recover Allotment—Defense of Limitations — Burden of Proof as to Age of Heir.**

Under the Act of May 27, 1908, the enrollment records of the Commissioner of the Five Civilized Tribes are conclusive evidence as to the age of an Indian citizen. Held, that where the date of majority of an Indian citizen is material in an action by such Indian heir to recover his share in his deceased mother's allotment, the burden is on the one claiming the bar of the statute of limitations against such Indian heir to prove the date of majority by the enrollment records.

(Syllabus by Lyons, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Nowata County; C. W. Mason, Judge.

Action by Sampson Dawes and Clifford J. Ballard, a minor, by his next friend, Sampson Dawes, against W. R. Brady et al. Judgment for defendants, and plaintiffs bring error. Reversed and remanded.

Asbury Burkhead and Norman Barker, for plaintiffs in error.

Geo. B. Schwabe, for defendants in error.

Opinion by LYONS, C. This case involves the title to the allotment of Polly Ballard, nee Spears, a three-quarter blood Cherokee Indian woman, enrolled opposite roll No. 112—10

14922, who died October 11, 1911, intestate, leaving as her sole heirs, the plaintiff in the court below, Sampson Dawes, a son, a Cherokee Indian of three-eighths blood, Clifford J. Ballard, a son, born since March 4, 1906; and Daisy B. Ballard, her husband. There is no question whatever but that the allotment of Polly Ballard, nee Spears, was restricted in her lifetime; after her death it was restricted also in the hands of Sampson Dawes, who was a minor at the time of her death, his age at that date not appearing definitely. Both during her lifetime and after her death, there was in force and effect a specific provision of the statutes of the United States providing that her allotment should not be subjected or held liable to any form of personal claim or demand arising or existing prior to the removal of restrictions. See section 4, Act May 27, 1908.

Further, Sampson Dawes' inheritance in the allotment of his mother, which he took by reason of his Indian blood, was under the restriction of minority, and could be conveyed away from him and title divested only in the manner provided by the federal statutes, which was by a guardian's sale in the proper court having jurisdiction. The Act of May 27, 1908, contains several other protective clauses designed to prevent the circumvention of the laws of the United States and the taking from Indian citizens of their property by any scheme or device whatsoever, and makes it the duty of various officers to enforce said protective clauses and to enforce the restrictions against the alienation of Indian allotments.

Further, it is of course well known that the county courts and the other courts of the state of Oklahoma are zealous to protect the estates of minors, and they are, or should be, doubly zealous to protect the estates of restricted Indian minors. The entire array of federal and state decisions of the question, with a very few exceptions, support this doctrine.

Sampson Dawes' estate was not divested in the only manner by which it could be legally divested. There was no guardian's sale of his inheritance in his mother's allotment, and he made no conveyance whatsoever conveying his interest. However, the administrator of his mother's estate conducted a proceeding squarely violative of the statutes of the United States, and squarely violative of the policy of the government of the United States, in dealing with its Indian wards, by which a purported administrator's

sale was had for the payment of debts. This sale was not merely void, not a mere nullity; but it was a positive, express and flagrant violation of an express statute of the United States. This express violation of the statutes of the United States was for some reason, mistakenly, no doubt, participated in by a county court of the state of Oklahoma, the very court charged by the federal statutes with the duty of protecting the estate of Sampson Dawes, a minor. By this means a sale was had of Sampson Dawes' interest in the allotment, and a so-called administrator's deed was made during his minority. The purchaser, who purchased during said minority, wrongfully and in violation of the statutes of the United States and in violation of the public policy of the United States, went into possession of this minor's inheritance, and it was claimed at the trial below that although the administrator's proceeding could not upon any theory convey any title or vest any right, still, the administrator's deed was color of title, and that the Indian minor, who has been wrongfully divested of his inheritance, must bring a suit within the time specified in subdivision 2, sections 184 and 185, C. O. S. 1921, or be barred by the state statute of limitations. It is said that the administrator's proceeding amounted to merely a void judicial sale, and that a deed given pursuant to such sale is color of title under the decision of this court in Dodson v. Middleton, 38 Okla. 763, 135 Pac. 368, where it is held that the following statutory provision:

"An action for the recovery of real property sold by executors, administrators, or guardians, upon an order or judgment of a court directing such sale, brought by the heirs or devisees of the deceased person, or the ward or his guardian, or any person claiming under any or either of them, by the title acquired after the date of the judgment or order, within five years after the date of the recording of the deed made in pursuance of the sale" (sec. 5548, Comp. Laws 1909, sec. 4655, R. L. 1910)

—applied even though the proceedings leading up to the sale were void.

We say that the foregoing case when rightly considered can have no application to this transaction. The subject-matter of that case was land owned by white citizens of Oklahoma Territory. The land was located in Logan county, Oklahoma Territory, and there were no statutes of the United States forbidding the alienation of it. The judicial sale in that case was held void for the reason that the probate court of Logan county issued letters of guardian-

ship for minors who were residents of Kingfisher county. We agree that the weight of authority is that where a judicial sale is void merely because prerequisites of the state law have not been complied with, the deed made pursuant thereto may become color of title. But how different is that situation from the situation presented in the case of Indian lands restricted by the laws of the United States, where a flagrant and direct violation of the laws and policy of the United States is involved in the proceeding.

The case relied on, which applies this doctrine to Indian lands, is the case of Sandlin v. Barker, 95 Okla. 113, 218 Pac. 519, being an opinion written by Mr. Justice Cochran. This case involved Indian lands, and the decision purports to be bottomed on the case of Dodson v. Middleton, supra. We think the correct rule, and the one which seems to us in its reason and logic to be squarely contrary to the decision in the case of Sandlin v. Barker, supra, is the decision in the case of Mullen v. Simmons, 234 U. S. 192, 34 Sup. Ct. Rep. 837, decided by the Supreme Court of the United States, where it is held:

"The Supreme Court of the state reversed the judgment, deciding 'that the lien of interpleader's judgment attached to the allotment as soon as it came into being; that plaintiff took the land subject thereto, and that the same should be enforced and said land sold to satisfy the same, and that, too, notwithstanding the provisions of the 15th section of the Act of July 1, 1902, which has no material bearing on the question'.

"The section referred to is as follows: 'Lands allotted to members and freedmen shall not be affected or incumbered by any deed, debt, or obligation of any character contracted prior to the time at which said land may be alienated under this act, nor shall the lands be sold except as herein provided.' (32 Stat. at L. 642, c. 1362.)

"The Supreme Court of Oklahoma, in deciding that this provision did not apply, distinguished between the obligations resulting from an Indian's wrongful conduct and the obligations resulting from his contracts, saying: 'A judgment in damages for tort is not a "debt contracted"' within the contemplation of section 15. In other words, the court was of the view that the tort retained its identity, though merged in the judgment. However, we need not enter into the controversy of the cases and the books as to whether a judgment is a contract. Passing such considerations, and regarding the policy of section 15 and its language, we are unable to concur with the Supreme Court of Oklahoma.

"This court said in Starr v. Long Jim, 227 U. S. 613, 625, 57 L. Ed. 670, 675, 33 Sup. Ct. Rep. 358, that the title to lands allotted to Indians was 'retained by the United States for reasons of public policy, and in order to protect the Indians against their own improvidence.' It was held, applying the principle, that a warranty deed made by Long Jim at a time when he did not have the power of alienation 'was in the very teeth of the policy of the law, and could not operate as a conveyance, either by its primary force or by way of estoppel,' after he had received a patent for the land.

"The principle was applied again in Franklin v. Lynch, 233 U. S. 269, 59 L. Ed. ——, 34 Sup. Ct. Rep. 505, and its strict character enforced against the deed of a white woman who acquired title in an Indian right. It is true, in these cases the act of the Indian was voluntary or contractual, and, it is contended, a different effect can be ascribed to the wrongs done by an Indian, and that in reparation or retribution of them, the state law may subject his inalienable lands—inalienable by the national law—to alienation. The consequence of the contention repels its acceptance. Torts are of variable degree. In the present case that counted on reached, perhaps, the degree of a crime, but a tort may be a breach of a mere legal duty, a consequence of negligent conduct. The policy of the law is, as we have said, to protect the Indians against their improvidence, and improvidence may affect all of their acts, those of commission and omission, contracts and torts. And we think section 15 of the Act of July 1, 1902, was purposely made broadly protective, broadly preclusive of alienation by any conduct of the Indian, and not only its policy, but its language distinguishes it from the statute passed on in Brun v. Mann, 12 L. R. A. (N. S.) 154, 151 Fed. 145. Its language is that 'lands allotted * * * shall not be affected or incumbered by any deed, debt, or obligation of any character contracted prior to the time at which' the lands may be alienated 'nor shall said lands be sold except' as in the act provided. The prohibition then is that the lands shall not be 'affected * * * by any obligation of any character' and as we have seen, an obligation may arise from a tort as well as from a contract, from a breach of duty, or the violation of a right. Exchange Bank v. Ford, 7 Colo. 314, 316, 3 Pac. 449. If this were not so, a prearranged tort and a judgment confessed would become an easy means of circumventing the policy of the law."

We think it is our duty to follow the decision of the Supreme Court of the United States, and to hold that a pretended administrator's sale of an allotment of a restricted Indian for debts, is not merely a void judicial sale, but is a direct and flagrant violation of a positive statute of the United States. Therefore, can a court consistently hold that such proceeding creates a color of title by virtue of which an Indian minor may be divested of his inheritance? We say no. The judgment of the trial court, holding that the statute of limitations referred to barred Sampson Dawes' recovery of his inheritance in his deceased mother's Indian allotment, was erroneous and must be reversed.

There is a second ground on which the judgment of the trial court must fail. The Act of May 27, 1908, section 3, provides as follows:

"That the rolls of citizenship and of freedmen of the Five Civilized Tribes approved by the Secretary of the Interior shall be conclusive evidence as to the quantum of Indian blood of any enrolled citizen or freedman of said tribes and of no other persons to determine questions arising under this act, and the enrollment records of the Commissioner of the Five Civilized Tribes shall hereafter be conclusive evidence as to the age of said citizen or freedman."

It has been held many times that the act means what it says, and that the rolls are the only competent evidence of age in questions arising under the Act of May 27, 1908. The date of majority of Sampson Dawes was not proved in the trial below by the enrollment records. One asserting the bar of limitations in a case of this character must prove his defense. It is contended by the defendant in the court below that Sampson Dawes, according to his own statement, was slightly over 23 years of age at the time of the filing of the suit. In a matter as important as this, if an Indian minor is to be divested of his inheritance by a state statute of limitations under an illegal and illicit administration proceeding, the date of the Indian minor's majority should be proved in the sole and exclusive manner provided by the United States statutes. For this error alone it would be necessary to reverse the case. However, we have concluded that the so-called administrator's deed is not color of title, and that the statute of limitations relied on is, therefore, not applicable.

The cause is reversed with instructions to the trial court to render judgment in favor of Sampson Dawes for the interest which he inherited in his deceased mother's allotment, and such other proceedings not inconsistent with the views herein expressed.

By the Court: It is so ordered.

Note.—See under (1) 2 C. J. p. 186. § 360; 31 C. J. p. 545, § 151. (2) 31 C. J. p. 490, § 31.