**FEDERAL DEPOSIT INSURANCE CORPORATION, as Liquidating Agent of First Continental Bank and Trust Company Appellee,**

v.

**Laura Lea SUMNER, Appellant,**

and

**Kenneth H. Sumner, if living, if deceased his heirs, known or unknown, Termplan of Oklahoma City, Inc., Oklahoma Tax Commission, Debbie L. Anglin, the Estate of Darrell G. Anglin, Charles Wercham, d/b/a Harrah Plumbing, Pat Fanning, Edith Sarah Johnson and Billy J. Jones, Defendants,**

**Carl W. Barnes, d/b/a Barnes and Sons and Betty June Barnes, Third–Party Defendants**

**Donald C. Slawson, Intervenor.**

**No. 74897.**

Court of Appeals of Oklahoma, Division No. 3.

July 23, 1991.

Rehearing Denied Aug. 20, 1991.

Certiorari Denied Nov. 20, 1991.

Robert J. Petrick, Tulsa, for appellant.

Jerry L. Hemry, Oklahoma City, for appellee.

## OPINION

HUNTER, Chief Judge:

In 1982, First Continental Bank and Trust Company, successor in interest to Del State Bank, sued Laura Lea Sumner, and others, to foreclose a mortgage.[1]

First Continental filed a notice of lis pendens with its petition, in which it listed Sumner as a debtor and described the property it was foreclosing.

Sumner owned one-half the minerals underlying the part of the mortgaged property at issue here. In 1983, six months after First Continental filed suit, Sumner leased those minerals to Donald C. Slawson. Later, there was production under the Slawson lease. Slawson intervened in this suit in 1985. He asked for a judgment telling him to whom the lease bonus and royalties should be paid. The trial court granted partial summary judgment for Slawson; it found Slawson had a valid oil and gas lease, and required Slawson to pay the lease bonus of $6,000.00 into court. The trial court also held First Continental had good title to the minerals Sumner leased to Slawson, subject only to foreclosure of Sumner's interest.

The trial court tried the case on the merits in 1986, and entered judgment for the FDIC, as liquidating agent of First Continental. The trial court directed Slawson to pay into court all royalty payments from the lease, to be applied in the same manner as any funds realized from the sale of the property to be foreclosed.

In 1988, the Sheriff sold the property to the FDIC at foreclosure sale. The FDIC moved to confirm the sale, but Sumner objected. Finally, on January 3, 1990 the trial court entered two orders over Sumner's objection. The trial court confirmed the sale of the property in one order, and ordered the funds from the Slawson lease paid to the FDIC in the other. Sumner then filed a motion for release of judgment, which the trial court denied on February 2, 1990. The FDIC has not sought a deficiency judgment. Sumner appeals from the three 1990 orders.

## ISSUE

Did the FDIC's failure to seek a deficiency judgment deprive it of the right to satisfy its judgment from future royalties realized from the Slawson lease? We hold that it did not.

---

1. In 1984 First Continental failed. The Federal Deposit Insurance Corporation, as First Continental's liquidating agent, became plaintiff.

## DISCUSSION

### I.

Sumner claims she is entitled to future royalty payments under the Slawson lease because the FDIC did not seek a deficiency judgment under 12 O.S.1981 § 686.[2] We disagree.

The deficiency statute, 12 O.S.1981, § 686, applies only to property not covered by the lien being foreclosed. It deals with requirements a mortgagee must fulfill before he may satisfy his judgment from property not covered by his mortgage. Here, the royalties from the Slawson lease were covered by the mortgage. Therefore, § 686 does not apply.

When First Continental filed suit, Sumner had not yet leased to Slawson the minerals at issue here. Oil and gas in place are part of the realty for so long as they remain unsevered. *White v. McVey*, 168 Okl. 19, 31 P.2d 850, 851 (1934). Even after a lease is signed, the royalty interest is treated as a right attached to and part of the lessor's ownership of the surface estate. *White*, supra, 31 P.2d at 852. When the ownership of property covered by an oil and gas lease is foreclosed, the title to royalties under the lease passes to the purchaser. *White*, supra, 31 P.2d at 852. The lease bonus and the proceeds from royalties, which Slawson paid into court, passed to the FDIC, as the purchaser at the foreclosure sale. Thus, upon confirmation of the sheriff's sale, the FDIC became the lessor of the Slawson lease. As the owner of the Slawson lease, the FDIC is entitled to all royalty payments from it.

First Continental's lis pendens notice insured that the trial court had jurisdiction to control both the lease and any payments made under its terms:

Lis pendens is to be viewed as a device by which the courts acquire the power or control over property involved in a suit for the period during which the action remains pending and before final judgment is rendered.

*White v. Wensauer*, 702 P.2d 15, 18 (Okl. 1985).

The trial court was thus empowered to enter its orders holding that accrued payments due under the Slawson lease should be paid to First Continental. The trial court was also correct in holding Sumner's minerals underlying the property would become the property of First Continental following completion of the foreclosure.

### II.

Sumner paid off one note covered by the mortgage the FDIC foreclosed, in August, 1984. That payment, $4,939.91, was made nearly two years after suit had been filed against her. Sumner contends the FDIC should have released the mortgage at that time. She bases her contention on the fact that the note she paid off was the one she signed when she signed the mortgage. This contention is without merit. The mortgage Sumner gave First Continental was security for five notes. Sumner has never paid the other notes that the mortgage secured. The mortgage provided:

This mortgage is intended to secure the payment of [description of original note omitted], and as well to secure the payment of all other indebtedness now due and owing said Mortgagee, and any and all indebtedness hereafter to become due and owing said Mortgagee.

The judgment entered against Sumner was based on those notes. All of the notes were secured by the mortgage. The amount of the judgment, including interest, was $313,588.89, with additional interest to accrue at the rate of $105.87 per day from July 23, 1985. The mortgage was security for the remaining unpaid notes.

### III.

Sumner claims she should be relieved of the burden of the judgment because the property upon which the FDIC

---

**2.** The FDIC contends it still may seek a deficiency under 12 O.S.1981 § 686, because certain property, not owned by Sumner, remains to be sold. For the reasons discussed in this opinion, we do not reach this issue.

foreclosed was her homestead. Sumner does not explain her reasons for making this claim. Homestead exemption is not available to one who grants a mortgage lien on his homestead. Sumner created a lien on her homestead by mortgaging it to First Continental. Homestead exemption is, therefore, not available to her.

The judgment of the trial court is AFFIRMED.

HANSEN, P.J. and JONES, J. concur.