1998 OK 110

HALLIBURTON OIL PRODUCING CO.,
an Oklahoma Corporation, Plaintiff–
Appellee (Garnishor),

v.

Rosalie GROTHAUS, Sally K. Taylor, United States of America ex rel. Internal Revenue Service, National Bank and Trust Company of Ada, Oklahoma, a national banking association, The Vogue Enterprises, Inc., Bailey, Banks & Biddle, previously known as Peacock Jewelers, Inc., and the Commissioners of the Land Office of the State of Oklahoma, General Motors Acceptance Corporation, First National Bank & Trust Co. of Ada, Oklahoma, Norman Drug Company A/K/A Norman Drug, Inc., County Treasurer of Seminole County, Oklahoma, and Board of County Commissioners of Seminole County, Oklahoma and Oklahoma Gas and Electric Company, Defendants–appellants,

and

Kerr–McGee Corporation Service Agent: Russell G. Horner 123 Robert S. Kerr Oklahoma City, OK 73102 Garnishee.

No. 87304.

Supreme Court of Oklahoma.

Nov. 3, 1998.

M. Allen Core, Tulsa, Oklahoma; Marcella Burgess Giles, McLean, Virginia; E. Edward Wiles, Potomac, Maryland for Appellants.

Terry Stokes, Fuller, Tubb Pomeroy, Kirschner, Bickford & Stokes, Oklahoma City, Oklahoma, and Gary P. Snow, Mattingly & Snow, Seminole, Oklahoma for Appellee.

OPALA, J.

¶1 The dispositive issue on certiorari is whether the money held by Kerr–McGee Corporation is impressed with immunity from liability because it represents gas runs from *restricted Indian land* [1]—*i.e.* produc-

---

**1.** Federal regulations governing Indian lands, 25 C.F.R. § 152, entitled "Issuance of Patents in Fee, Certificates of Competency, Removal of Restrictions, and Sale of Certain Indian Lands,"

tion that occurred after restoration of the land's restricted status. Because we cannot tell on this record whether garnishment-impressed funds are proceeds from pre- or post-restoration gas runs (runs that *preceded* or *succeeded* the land's restoration to restricted status), the trial court's post-deficiency payover order is reversed and the cause remanded for further proceedings to be consistent with today's pronouncement.

## I

## THE ANATOMY OF LITIGATION

### The Foreclosure Suit

¶ 2   Rosalie Grothaus and Sally K. Taylor [Grothaus and Taylor, deficiency-order debtors or defendants] inherited restricted Indian land.  On 27 February 1976 they executed a promissory note and secured its payment by a mortgage on the inherited property.  The note and mortgage were approved by the Bureau of Indian Affairs [BIA].

¶ 3   Halliburton Oil Producing Company [Halliburton, judgment creditor or mortgagee] succeeded by assignment to the ownership of the note and mortgage.  Upon the defendants' default, Halliburton brought suit on the note and foreclosed the mortgage.  The property was then offered at sheriff's sale to satisfy the judgment.  An October 5, 1992 deficiency determination for the unsatisfied amount of the adjudicated indebtedness followed the sale.  The post-sale deficiency

order and affidavit of judgment were filed of record in the office of the county clerk on 20 October 1992.[2]

### The Garnishment Proceedings

¶ 4   Upon learning, some three years later, that the defendants were receiving income from gas production (*on other land* than that included in the foreclosure) from property consisting of two separate tracts located in the county, Halliburton brought garnishment proceedings against Kerr–McGee Corporation [Kerr–McGee or garnishee].[3]   Garnishee's amended answer states that it has on hand for defendant Taylor $1,057.54.  Halliburton concedes the garnishment, insofar as it affects Grothaus' indebtedness, may be subject to a prior claim by the IRS.[4]  The deficiency-order debtors pressed separate claims for exemption from garnishment, maintaining that the production was from restricted Indian property.  The answer by the Secretary of the Interior [Secretary] to the garnishment proceeding states that: (a) the two tracts of land in controversy are owned by Grothaus and Taylor;  (b) on *5 September 1986* the BIA determined that the property was not restricted and executed a relinquishment of the land's supervision;  (c) the BIA later determined in *August 1994* that the land was in fact restricted, basing its decision on a finding that the deficiency-order debtors had sufficient quantum of Indian blood and (d) the determination of their

define restricted Indian land.  The pertinent terms of 25 C.F.R. § 152.1(c) (Definitions) are:
   "As used in this part:
* * *
   (c) "Restricted land" means land or any interest therein, the title to which is held by an individual Indian, subject to Federal restrictions against alienation or encumbrance.
* * * *"
*Mullen v. Simmons*, 234 U.S. 192, 198–99, 34 S.Ct. 857, 859, 58 L.Ed. 1274 (1914)(trust land may not be encumbered by any judgment against the holder of the beneficial title).

2.   A September 28, 1992 motion for deficiency was filed within 90 days of the sheriff's sale (held 20 August 1992).  The trial court set the amount of the deficiency.  *See* 12 O.S.1991 § 686.  Its order was entered and recorded in the office of the county clerk.  *See Neil Acquisition v. Wingrod Investment Corp.*, 1996 OK 125, 932 P.2d 1100, 1105–06.

3.   According to garnishee's amended answer, Kerr–McGee Refining Corporation was *incorrectly identified* in the caption as Kerr–McGee Corporation.

4.   A "summary of the case" filed by Halliburton in the garnishment proceedings shows that (a) Kerr–McGee had responded that it held proceeds "attributable to the defendants/judgment debtors" and (b) Kerr–McGee "is currently paying the U.S. Internal Revenue Service for the account [of] Rosalie Grothaus pursuant to a [9 March 1994] tax levy."  According to a letter from the BIA to defendants' counsel (which was attached to their objection to garnishment proceedings), the "IRS garnishment was levied prior to the October 1994 determination [of the land's restoration to restricted status] and the Bureau is currently in the process of having said lien removed."

actual Indian blood relates back to their acquisition of the land. According to the Secretary, although restricted Indian land is generally not subject to creditors' claims and notwithstanding the land's current restricted status, *"the royalty income from the property is subject to the preexisting judgment lien at the point that the restricted property was recognized by the BIA as restricted."* [5] (Emphasis supplied.) The Secretary stated that he would have no objection to a determination that the royalties were "subject to the preexisting judgment lien."

¶ 5 Grothaus and Taylor objected to the garnishment, arguing that: (a) Halliburton was attempting to encumber restricted assets to satisfy a judgment entered against property that is not the subject of the garnishment proceedings; (b) the Secretary had approved the mortgage to secure an indebtedness of the *property* that had been foreclosed upon; (c) but because there is no proof that the Secretary had approved an encumbrance upon the property in contest in the garnishment proceedings, it is invalid; (d) the federal jurisprudence relied upon by the Secretary is factually distinguishable from this case and (e) the trial court is without jurisdiction to encumber restricted Indian land without prior approval by the Secretary.

■ ¶ 6 The trial court (a) *found* that the proceeds from gas production which Kerr-McGee holds in obedience to the garnishment process are available for the satisfaction of the debt, (b) *denied* Grothaus' and Taylor's claim of exemption based on the land's restricted status and (c) *ordered* the funds paid over to the judgment creditor. The defendants unsuccessfully pressed the trial court to "reconsider" [6] its denial of their separate claims for exemption from execution, arguing

that (a) the property in contest has always been restricted because none of the requirements for removal of the restrictions has occurred and (b) the Secretary's answer in the garnishment incorrectly states that *both* tracts of land (whose production proceeds are sought) were determined to be unrestricted on 5 September 1986.[7]

¶ 7 The Court of Civil Appeals reversed, holding that (a) whatever lien rights may have attached during the land's unrestricted status were contingent upon the resolution of the controversy over the quantum of defendants' Indian blood and (b) the lien's enforcement by garnishment or other process was barred upon restoration of the land to restricted status. Because the garnishment summons were issued to Kerr-McGee after the land's restricted-status restoration, the defendants were deemed entitled to a full exemption of the royalty proceeds from garnishment.

**II**

**THERE IS NO LEGAL INFIRMITY IN THE FORECLOSURE DECREE, ORDER OF SALE, CONFIRMATION-OF-SALE ORDER AND IN THE DEFICIENCY DETERMINATION**

¶ 8 The deficiency-order debtors attack the foreclosure decree, order of sale, confirmation-of-sale order and the deficiency order as void because separate appraisals were not submitted for the surface and mineral estates. They claim that because the process of conducting the sheriff's sale was contrary to statutory requirements, (a) the order confirming the sale is void and (b) the court lacked subject matter jurisdiction to deter-

---

**5.** For this notion the Secretary of Interior cites *United States v. Taunah*, 730 F.2d 1360 (10th Cir.1984) and *Arenas v. Preston*, 181 F.2d 62 (9th Cir.1950).

**6.** The so-called "motion to reconsider" is a stranger to the statutory nomenclature in Oklahoma's nisi prius practice and procedure. It causes great confusion. If *timely filed, a motion to reconsider may be* regarded as one for new trial made under the provisions of 12 O.S.1991 § 651. It is hence effective to extend appeal time for review of a final order or judgment. *Horizons, Inc. v. KEO Leasing Co.*, 1984 OK 24,

681 P.2d 757, 758. *The defendants' quest for "reconsideration," which was brought within ten days of the payover order, will hence be deemed a timely new trial motion.*

**7.** In support of their argument, the deficiency-order debtors attached a copy of (a) a relinquishment of supervision, dated 5 September 1986, which *describes only one of the tracts* of land and (b) a December 22, 1989 letter from the BIA area director to an oil company, which deals with the other tract.

mine any deficiency on the obligation adjudged in the foreclosure decree. Defendants also urge the deficiency determination does not meet the *sine qua non* prerequisites for a lien. This is so because the statutory formula requires a determination of "a fair and reasonable market value of the mortgaged premises,"[8] whereas the trial court merely used the appraisal submitted to the sheriff. According to the deficiency debtors, (a) the statutory requirements for a deficiency determination are jurisdictional, (b) in their absence the trial court does not have subject matter jurisdiction to issue execution and (c) the infirmity appears on the face of the judgment roll. In sum, defendants argue that the decree and postdecree orders are facially void for want of power to pronounce the deficiency determination, the order of sale and that of post-sale confirmation.

¶ 9 This argument is *sans* support in the record and clearly without merit. No predicate has been laid in the trial court for an appellate argument questioning the facial validity of either the foreclosure decree or of any of the challenged post-decree orders. *The only ground correctly laid for this certiorari review* is the deficiency debtors' claim that the land is entitled to the protection of restricted Indian ownership.

8. 12 O.S.1991 § 686.

9. The materials that must be included in the judgment roll are listed in 12 O.S.1991 § 32.1. The pertinent terms of § 32.1 are:
   "The record shall be made up from the petition, the process, return, the pleadings subsequent thereto, reports, verdicts, orders, judgments, and all material acts and proceedings of the court.... Evidence must not be recorded."
   The term "record" or "record proper" is synonymous with "common-law record" and "judgment roll." *Rodgers v. Higgins*, 1993 OK 45, 871 P.2d 398, 405.

10. *Messenger v. Messenger*, 1992 OK 27, 827 P.2d 865, 870 n. 21; *Heiman v. Atlantic Richfield Co.*, 1991 OK 22, 807 P.2d 257, 260 n. 11; *Capitol Federal Savings Bank v. Bewley*, 1990 OK 79, 795 P.2d 1051, 1054; *Hough v. Hough*, 1989 OK 65, 772 P.2d 920, 921; *Mayhue v. Mayhue*, 1985 OK 68, 706 P.2d 890, 893 n. 8; *Scoufos v. Fuller*, 1954 OK 363, 280 P.2d 720, 723; *State ex rel. Commissioners of Land Office v. Keller*, 1953 OK 371, 264 P.2d 742, 747–748.

11. When a district court judgment or order is void on the face of the judgment roll (and no proof dehors the record is needed to show a fatal

## Facial Infirmity

¶ 10 A district court judgment or order is facially void if, on an inspection of the judgment roll,[9] it is apparent that one or more of the requisite jurisdictional elements—that of the subject matter, *in personam* cognizance, or the court's power to render a particular decision—is shown to have been absent.[10] Whenever absence of cognizance appears on the face of the judgment roll, the judicial act is void and subject to attack at any time.[11]

¶ 11 *The defendants' argument is clearly without record support.* For a showing that a judicial act lacks facial validity, an *entire judgment roll* must be included in the materials presented for review. The defendants failed to incorporate into the record for this appeal the entire judgment roll record for (a) the foreclosure suit, (b) the sheriff's sale, (c) the post-sale confirmation and of (d) the deficiency determination.[12] The duty to incorporate into the record all materials necessary to secure corrective relief is cast by law on the appellant.[13] A reviewing court may take notice only of that record which is before it.[14]

jurisdictional defect), no lapse of time can bar an attack, direct or collateral. 12 O.S.1991 § 1038; *Hough, supra* note 10 at 921; *Mayhue, supra* note 10 at 895; *Scoufos, supra* note 10 at 723. But if extrinsic evidence is needed to show the jurisdiction's absence, the judgment is not facially invalid, although it may be declared voidable. *Scoufos, supra* note 10 at 723; *Hough, supra* note 10 at 921.

12. For the statutory "judgment roll", see *supra* note 9.

13. *Davidson v. Gregory*, 1989 OK 87, 780 P.2d 679, 682.

14. *Sooner Federal Savings and Loan Association v. Mobley*, 1981 OK 124, 645 P.2d 1000, 1004.

The parties have *attempted* to supplement the appellate record *by attachment of some paper to their briefs* on appeal. (I) *Halliburton* responded to defendants' argument that the district court did not have jurisdiction to determine the garnishability of royalty income by attaching to its answer brief a copy of an opinion by the Supreme Court of the Muscogee (Creek) Nation. That was an improper supplement of the record.

### *Untimely Vacation Attack Pressed On Certiorari*

¶ 12 Even if the judgment roll were before the court, defendants' attack upon the postdecree orders, based on an alleged facial defect or infirmity, is impermissible and must fail. The claimed defect does not constitute an infirmity that would impair the court's jurisdiction in the garnishment proceedings.[15] The alleged irregularities, if any, would at most constitute legal error, rather than a jurisdiction-vitiating defect. When the authority to deal with a subject does exist, the manner and extent of the power's exercise, even if patently excessive, must stand undisturbed, absent a timely challenge by direct attack.[16] The defect, if any, in the underlying adjudicated indebtedness cannot be challenged except by a timely vacation process to be launched in the foreclosure suit.[17] There is in this record no paper trail of a motion to vacate any of these

critical pre-garnishment dispositions for a facially fatal defect or for some other infirmity.

¶ 13 In sum, the foreclosure decree and the three post-decree orders are not open to attack in this case because (a) no vacation proceedings had been brought below that are now sought to be reviewed and (b) there is absolutely no record support for a collateral challenge for facial jurisdictional defects in the nisi prius rulings. Because on this record no facial infirmity in the critical adjudications is apparent, they must stand here impervious to a challenge.

### III

### THE STATUS OF THE DEFICIENCY DETERMINATION AS A JUDGMENT LIEN IS NOT IMPLICATED

¶ 14 Halliburton argues that by placing the deficiency determination [18] of record in the county clerk's office on 20 October

This court may not consider as part of an appellate record any instrument or material which has not been incorporated into the assembled record by a certificate of the clerk of the trial court. *Frey v. Independence Fire and Cas. Co.*, 1985 OK 25, 698 P.2d 17, 20; *Eckel v. Adair*, 1984 OK 86, 698 P.2d 921, 925. Neither may a deficient record be supplemented by material physically attached to a party's appellate brief. Eckel, *supra* at 925; *In Re Hess' Estate*, 1962 OK 74, 379 P.2d 851, 859. Counter-designation affords the only sanctioned procedure for inclusion into the appellate record of material which, though omitted from designation by the appellant, is sought to be incorporated. Rule 1.28(c), Oklahoma Supreme Court Rules, 12 O.S.Supp.1997, Ch. 15, App. 1. A narrow exception is recognized *for uncontroverted extra-judicial facts which stand admitted in the briefs.* These admissions may be regarded as supplementing the appellate record. *Strelecki v. Oklahoma Tax Com'n*, 1993 OK 122, 872 P.2d 910, 918; *Reeves v. Agee*, 1989 OK 25, 769 P.2d 745, 753–754; *Womack v. City of Oklahoma City*, 1986 OK 14, 726 P.2d 1178, 1181; *Timmons v. Royal Globe Ins. Co.*, 1985 OK 76, 713 P.2d 589, 592 n. 10. Supplementation of the record was not necessary in this case because, as we hold today, the foreclosure decree, the order confirming sale, the post-sale confirmation and deficiency order are not now open to judicial reexamination in this case. (II) The *deficiency-order debtors* also attempted an impermissible supplementation of the appellate record by attaching a letter to their brief in chief—*i.e.*, a copy of an August 1, 1980 letter from Halliburton to the Federal Land Bank Association, the bank from which Halliburton secured the assignment of the note and mortgage. That supplementation

also is unauthorized because the material had not been tendered to the trial court during any pre-order proceedings. *Frey, supra at* 20.

15. Defendants' reliance on *Cate v. Archon Oil Co.*, 1985 OK 15, 695 P.2d 1352 is misplaced. *That case was a direct appeal for review of error.* The infirmity pressed here would, at most, be an error rather than a jurisdiction-vitiating defect.

16. Jurisdiction is not wanting but merely exceeded when judicial authority is exercised erroneously. Neither legal error nor an excessive exercise of cognizance operates to render a judicial act facially void and hence vulnerable to attack. *Mayhue, supra* note 10 at 893; Woodrow v. Ewing, 1953 OK 60, 263 P.2d 167, 171.

17. The terms of 12 O.S.1991 § 1031 provide:

"The district court shall have power to vacate or modify its own judgments or orders within the times prescribed hereafter: * * * "

18. We do not refer to the deficiency determination as a "deficiency judgment." There can be but one "judgment" on a single cause of action. *FDIC v. Tidwell*, 1991 OK 119, 820 P.2d 1338, 1343. The single judgment in a foreclosure suit is the court's determination of the amount due the creditor and its order that the encumbered property be sold to satisfy the mortgaged obligation. *Mehojah v. Moore*, 1987 OK CIV APP 43, 744 P.2d 222, 225 (approved for publication by the Supreme Court). The *Mehojah* analysis was further refined in *Neil Acquisition v. Wingrod Investment Corp.*, *supra* note 2 at 1104.

1992, a 12 O.S.1991 § 706 [19] lien at once attached to the defendants' unrestricted mineral interest. The restoration of the land's restricted status in August 1994, Halliburton claims, did not operate to extinguish its lien that stood then firmly attached. Halliburton argues in effect that its perfected judgment lien on realty survived the severance of the gas and can be traced directly to the proceeds on hand at Kerr–McGee. COCA, on the other hand, held that Halliburton's judgment lien rights "were contingent upon the resolution of the controversy over the quantum of the defendants' Indian blood." *Both views incorrectly intermingle judgment lien concepts with the statutory garnishment process.*

¶ 15 When garnishment is the chosen judgment enforcement method, the status of a deficiency determination as a § 706 lien *is not implicated.* A § 706 judgment lien attaches only to realty and cannot survive the lifting of minerals.[20] Oil and gas *in situ* are part of the realty,[21] but when severed from the leasehold they become personal property.[22] An oil and gas lease does not operate as a conveyance of any oil and gas *in situ,* but constitutes merely a right to search for and capture these substances.[23]

¶ 16 The enforcement method pressed by Halliburton is not compatible with its assertion of a § 706 lien on realty. From the *time of garnishment summons service* the *res* in the hands of the summoned third party *is impressed with an equitable lien* in favor of the judgment creditor (Halliburton), who brought the garnishment. *What · Halliburton seeks through garnishment is personal property to which a § 706 lien does not attach.* Halliburton's judgment lien theory is an impermissible attempt to jump through two insurmountable hoops— from realty into extracted gas and then from severed gas into royalty proceeds—all in an attempt to reach money derived from the sale of gas extracted from property owned by the deficiency-order debtors.

¶ 17 The proceeds from oil (or gas) lifted from land that was *not* in restricted Indian ownership at the time of severance is reachable by garnishment and available for the creditor's satisfaction. *The land's status at the point of extraction is critical in assessing the proceeds' availability.* This approach is entirely consistent with the long-held view *that land restricted* when it is to be affected by legal process *stands immune*

19. The pertinent terms of 12 O.S.1991 § 706 were:

"A. Judgments of courts of record of this state and of the United States shall be liens on the real estate of the judgment debtor within a county after a certified copy of such judgment with an affidavit of judgment in the form provided in Section 2 of this act attached on the front of, and incorporating by reference, such judgment has been filed in the office of the county clerk in that county. No judgment, whether rendered by a court of the state or of the United States, shall be a lien on the real estate of a judgment debtor in any county until it has been filed in this manner. Execution shall be issued only from the court in which the judgment is rendered. Such judgment lien shall only affect the real estate of judgment debtors whose names appear on both the affidavit of judgment and the attached judgment. Presentation of such affidavit of judgment with a certified copy attached of the judgment described in such affidavit, and tender of the filing fee, shall, upon acceptance by the county clerk, constitute filing under this section. * * *"

The 1993 and 1997 amendments of § 706 do not affect this appeal.

20. *Hinds v. Phillips Petroleum Co.,* 1979 OK 22, 591 P.2d 697, 698–99.

21. *White v. McVey,* 168 Okl. 19, 31 P.2d 850, 851 (1934); *Cuff v. Koslosky,* 165 Okl. 135, 25 P.2d 290, 291 (1933); *see also FDIC v. Sumner,* 1991 OK CIV APP 69, 820 P.2d 1357, 1359; *Continental Supply Co. v. Marshall,* 152 F.2d 300, 306 (10th Cir.1946).

22. *Carpenter v. Shaw,* 134 Okl. 29, 272 P. 393, 398 (1928), reversed on other grounds, 280 U.S. 363, 50 S.Ct. 121, 74 L.Ed. 478; *Keystone Pipe & Supply Co. v. Crabtree,* 174 Okl. 562, 50 P.2d 1086, 1088 (1935); *see also Continental, supra* note 21 at 306.

23. *Hinds, supra* note 20 at 698–99; *DeMik v. Cargill,* 1971 OK 61, 485 P.2d 229, 232; *Pauline Oil & Gas Co. v. Fischer,* 185 Okl. 108, 90 P.2d 411, 412 (1939)(the interest conveyed by an oil and gas lease is not real estate within the meaning of § 706, which gives a judgment creditor a lien upon the real estate belonging to the judgment debtor); *State v. Shamblin,* 185 Okl. 126, 90 P.2d 1053, 1055 (1939)(oil and gas mining leases are chattels real and therefore personal property).

from the owner's liability for obligations adjudged (or incurred) *before* the premises attained the legally protected status.[24] The garnishment-impressed *res* in the hands of Kerr–McGee is available to Halliburton *unless*, of course, the deficiency-order debtors can prove that it is in whole or in part derived from post-restoration runs—*i.e.*, from minerals underlying land then held in restricted ownership.[25]

¶ 18 In sum, the garnishability of the *res*—held by Kerr–McGee on behalf of the deficiency-order debtors when summons was served—hinges on whether the funds were derived from pre-restoration or post-restoration runs. If any of the *res* to which the equitable lien attached at the time summons was served is royalty from post-restoration production, that part should be released from garnishment. This *determination cannot be made on the record before us.*

## IV

## THE NATURE AND PURPOSE OF POST–REMAND PROCEEDINGS TO BE CONDUCTED UNDER THIS COURT'S MANDATE

¶ 19 We are remanding this cause for a hearing and determination of at least *two unresolved issues essential to deciding the deficiency-order debtors' claim to an exemption from garnishment* based upon immunity conferred on their ownership of restricted Indian lands: (a) whether only *one*

or *both tracts* of land from which the royalty proceeds derived stood unrestored to restricted status at the critical time in contest and (b) whether any part of the garnishment-impressed *res* can be traced to post-restoration runs.[26] In the post-remand proceedings directed to be held the deficiency debtors will bear the burden of showing that the gas run proceeds sought to be seized by Halliburton are in fact allocable to production from restricted Indian lands.

¶ 20 The record in this case lacks clarity with reference to the two critical tracts from which gas production was taken. According to the Secretary's answer, the BIA issued a *relinquishment* of supervision [cessation of restricted status] *as to both tracts.* No supporting documents are attached to its answer. The defendants' "motion for reconsideration" raises a serious question about the status of one of the tracts. To that motion they attach (a) a September .5, 1986 relinquishment of supervision issued on only one tract of land and (b) a letter from the BIA to an oil company about the expiration of a lease on the other tract. This correspondence, as the defendants urge, indicates that the BIA may not have relinquished supervision over the latter property. The question whether both properties' restricted status was removed in 1986 is of course one of fact. It should be resolved on remand.

¶ 21 The garnishee's amended answer, which states that Kerr–McGee is holding funds for defendant Taylor, does not reveal whether any of the funds on hand are attributable to gas production *before or after resto-*

---

24. *Mullen, supra* note 1, 234 U.S. at 198–99, 34 S.Ct. at 859.

25. Pre-restoration runs are not protected from seizure from creditors because they are proceeds of gas severed from unrestricted Indian property. If all of the runs in contest were removed from unrestricted land, they constituted nothing more or less than unprotected personalty subject to garnishment process. Restricted Indian land makes both the land and its proceeds unavailable. *See House v. United States*, 144 F.2d 555, 560 (10th Cir.1944).

26. The record reveals there *may be another unresolved issue* that was not called to our attention by briefs. It arises from an IRS claim of an unknown nature to the runs belonging to Grothaus. Halliburton concedes in its summary of the case that the garnishment may be subject to a

prior IRS claim. *See supra* note 4. Except for this concession, there is no other material to enlighten us on that issue, nor does the payover order contain any direction that Kerr–McGee is to follow in determining what, if any, funds on hand may be released to the judgment creditor. *See also* the Interior Secretary's answer (*text at* Part I *supra*), which indicates there may be an unsettled question ( not called to our attention) which arises from an IRS claim of an unknown nature to the runs belonging to one or both of the defendants. Neither party raises that issue here, nor can we tell whether the priority of an IRS claim has been tendered below for resolution. We express no opinion with respect to that priority, if any, leaving that issue for trial court's post-remand adjudication.

*ration* of the producing property's restricted status. If any runs in contest are from post-restoration land, they would stand impressed with a claim of immunity. Should the court determine that the funds cannot be traced to post-restoration runs, the garnishment-impressed *res* would be subject to creditor's seizure.

¶ 22 The answer of the Secretary is fraught with an inherent ambiguity, perhaps because of the BIA's misunderstanding that the instant proceeding was one to enforce a judgment lien rather than one to reach personalty through garnishment process for the satisfaction of a deficiency determination. According to the Secretary's response, the royalty income from the two restricted properties was subject to the preexisting judgment lien. If the Secretary was mistaken, as we believe he may have been, that the process in progress was for a judgment lien enforcement rather than one to seize funds by garnishment, the BIA should be afforded the opportunity to clarify its position after remand.

## V

## SUMMARY

¶ 23 No proceedings had been instituted below to vacate the deficiency determination. The attack lodged for the first time on certiorari comes too late. There is absolutely *no record support* for any attack upon the facial validity of (1) the foreclosure decree, (2) the order of sale, (3) the confirmation-of-sale order or of (4) the deficiency determination. These adjudications stand here impervious to attack for their facial invalidity.

¶ 24 A judgment lien will neither attach to an oil and gas lease nor to the proceeds of any lifted substances. From the time of garnishment summons service, money *then in the hands* of the garnishee is impressed with an equitable lien in garnishor's favor. If any of the garnishment-impressed *res* to which the equitable lien attached at the time summons was served in this case comes from post-restoration runs, it must be released. Because on this record the issues essential to deciding the deficiency-order debtors' claim to immunity from liability remain unresolved,

this cause must be remanded for their determination.

¶ 25 On certiorari granted upon the judgment creditor's petition, the Court of Civil Appeals' opinion is vacated; the trial court's post-deficiency payover order is reversed and the cause is remanded for further proceedings to be consistent with today's pronouncement.

¶ 26 HODGES, LAVENDER, SIMMS, HARGRAVE, ALMA WILSON and WATT, JJ., concur.

¶ 27 SUMMERS, V.C.J., concurs in part and dissents in part.

¶ 28 KAUGER, C.J., recused.

