CAROL M. HANSEN, Judge.
 

 T1 This appeal arises from the action of Plaintiff/Appellee/Counter-Appellant, Chaparral Energy, LLC. (Chaparral), against Defendant/Appellant/Counter-Appellee, Pioneer Exploration, Ltd. (Pioneer), to recover for a gas imbalance. Both parties seek review of the trial court's order granting summary judgment in favor of Chaparral for conversion and setting damages based on the imbalanee's value as of the date the trial court found the conversion claim acerued. We reverse, holding the parties' accounting dispute did not as a matter of law give rise to a conversion claim.
 

 12 The gas imbalance arose before the parties acquired their interests in the two wells at issue, the Mclain F Nos. 1-82 and 4-82 wells. Pioneer acquired its interest and assumed operations from Phillips Petroleum Corporation in July 1999. Chaparral purchased its interest from the bankruptcy estates of Bristol Resources Corporation and its affiliates (collectively Bristol) effective July 1, 2000.
 

 T3 In 2006, Chaparral requested gas balancing statements for the time period imme
 
 *1159
 
 diately prior to July 1, 2000. In response, Pioneer requested documentation showing Chaparral was entitled to the gas balancing adjustments prior to July 1, 2000. Chaparral provided a copy of the conveyance document from Bristol to Chaparral, which transferred all of Bristol's "rights, titles, and interests" in the mineral interests, royalty interests, overriding royalty interests, and mineral leases in the described lands, as well as in associated contracts, including operating agreements. The conveyance excepted gas imbalances from a reservation of rights or choses in action arising prior to the effective date of the conveyance.
 

 14 Pioneer took the position the conveyance did not address the underproduction prior to July 1, 2000. It therefore continued to show the gas imbalance attributable to Chaparral in its records as beginning with July 1, 2000 production. It did not attribute Bristol's imbalance (Historic Imbalance) to Chaparral.
 

 T5 Chaparral sued Pioneer for an accounting, in-kind or cash balancing, breach of contract, conversion, and violation of the Natural Gas Market Sharing Act (Sweetheart Gas Act), 52 0.8.2001 §§ 581.1-581.10. Pioneer answered and denied liability. Chaparral moved for summary judgment on its claim for conversion, arguing Pioneer wrongfully converted the Historic Imbalance when it "eliminated" the imbalance instead of transferring it to Chaparral. In response, Pioneer conceded Chaparral assumed Bristol's position as an underproduced or overproduced party when it acquired Bristol's interests in the McLain wells, but argued Chaparral had only a chose in action for gas balancing, and not a tort claim for conversion.
 

 T 6 Pioneer counter-moved for partial summary judgment as to Chaparral's claims for conversion and violation of the Sweetheart Gas Act, arguing (1) Pioneer's failure to show on the gas balancing statements a gas imbalance attributable to Chaparral's interest in the Mclain wells prior to July 1, 2000 does not constitute a conversion of tangible personal property as a matter of law, and (2) the Sweetheart Gas Act does not apply where an operating agreement provides for the taking, sharing, and marketing of gas even if the agreement does not contain a gas balancing agreement.
 

 T7 The trial court granted summary judgment in favor of Chaparral on its conversion claim and denied Pioneer's counter-motion on the claim. The trial court denied Pioneer's motion for summary disposition as to the Sweetheart Gas Act claim based upon Chaparral's voluntary dismissal of its claim. The trial court dismissed Chaparral's breach of contract claim based upon its ruling at a hearing not included in the appellate record.
 

 T8 After a separate hearing on damages, the trial court entered an order finding the amount of Historie Imbalance from the McLain F Nos. 1-32 and 4-82 wells attributable to Chaparral and converted by Pioneer was 6,559 mcf
 
 [1]
 
 and 19,8364 mef, respectively. The trial court denied Chaparral's request to value damages pursuant to 23 0.98.2001 § 64(2) at the highest market value of the property at any time between the conversion and the verdict, finding Chaparral did not exercise due diligence in pursuing its conversion claim. However, it did grant Chaparral's alternative request to value damages pursuant to $ 64(1) at the value of the property at the time of conversion on November 14, 2007, with interest from that time. The trial court granted judgment to Chaparral in the amount of $311,919.14. It dismissed Chaparral's remaining claims without prejudice.
 

 T9 Both sides appeal from the judgment. Pioneer contends the trial court erred in granting judgment for conversion because an underproduced party has a claim for equitable gas balancing in the absence of a gas balancing agreement, not for conversion. Chaparral contends the trial court erred in refusing to award damages based on the highest market value of the Historic Imbalance between the date its conversion claim accrued and the date the trial court granted summary judgment.
 

 T10 Because a grant of summary judgment involves purely legal determinations, we will review the trial court's decision under a de novo standard. Carmichael v. Beller,
 
 *1160
 
 1996 OK 48, 914 P.2d 1051, 1053. Summary judgment is appropriate only when there is no substantial controversy as to any material fact and one of the parties is entitled to judgment as a matter of law. 12 O.8.Supp. 2002, Ch. 2, App. 1, Rule 13.
 

 T11 Conversion is an act of dominion wrongfully exerted over another's tangible personal property in denial of or inconsistent with the owner's rights in the property. Conversion does not lie for a debt. Welty v. Martinaire of Oklahoma, Inc., 1994 OK 10, 867 P.2d 1273, 1275. Oil and gas do not become personal property until produced and severed from the leasehold. When they are in situ, they are considered part of the realty. Halliburton Oil Producing Co. v. Grothaus, 1998 OK 110, 981 P.2d 1244, 1251. Therefore, oil and gas in situ are not subject to conversion.
 

 112 After oil or gas is produced, it is tangible personal property and is subject to conversion. However, under the common law in Oklahoma, working interest owners in an oil or gas well are tenants in common. Each cotenant has the right to develop the property and market production, subject only to the duty to account to other cotenants. Therefore, under ordinary cireumstances, the sale of gas to a purchaser by a cotenant without the consent of other cotenants is lawful and does not constitute conversion on the part of either the working interest coten-ant or the purchaser. Anderson v. Dyco Petroleum Corp., 1989 OK 132, 782 P.2d 1367, 1371-1372.
 

 1183 The provision of the operating agreement that permits each owner to take and market its share of production in kind anticipates that any owner may take at any time. When one working interest cotenant sells more than its share of gas and there is no gas balancing agreement, the equitable remedy available to the other cotenants is either balancing in kind, periodic cash balancing prior to depletion, or cash balancing at depletion, depending upon the cireum-stances. Harrell v. Samson Resources Co., 1998 OK 69, 980 P.2d 99, 105.
 

 " 14 In the present case, Chaparral asserts Pioneer converted the Historic Imbalance by zeroing-out the gas volume held for Chaparral's account on the gas balancing statement. The gas represented by the Historic Imbalance was not converted because it was produced and sold by a cotenant with the right to do so. The Historic Imbalance itself is not tangible personal property but is an accounting entry. The allegation Pioneer eliminated the Historic Imbalance is in essence an allegation Pioneer has improperly accounted to its cotenant, Chaparral, for its overproduction. Chaparral's cause of action is not for conversion but for accounting and gas balancing.
 

 {15 The trial court improperly granted summary judgment to Chaparral for conversion. -Its judgment is REVERSED and this matter is REMANDED for further proceedings consistent with this opinion.
 

 BUETUNER, P.J., and HETHERINGTON, J., concur.
 

 [1]
 

 . Mef = one thousand cubic feet.