2001 OK 2

Cynthia A. WALKER, an individual, Appellant,

v.

GROUP HEALTH SERVICES, INC., a corporation, d/b/a/ Blue Cross/Blue Shield of Oklahoma; and GHS Health Maintenance Organization, Inc., d/b/a BlueLincs HMO, Appellees.

No. 94,380.

Supreme Court of Oklahoma.

Jan. 16, 2001.

As Corrected on Denial of Rehearing April 23, 2001.

Steven S. Mansell, Mark A. Engel, Steven S. Ashmore, Oklahoma City, OK, for Appellant.

Harvey D. Ellis, Kevin D. Gordon, Tamela R. Hughlett, Oklahoma City, OK, for Appellees.

Paul C. Duncan, Kathy Austin, Oklahoma City, OK, for Amicus Curiae, Oklahoma State & Education Employees Group Insurance Board.

KAUGER, J.:

¶1 We retained this cause to determine: 1) whether a health maintenance organization (HMO)[1] may be liable to a state employee for bad faith breach of an insurance contract; and 2) whether, when an insured has received payment for disputed medical expenses, the requirements for exhaustion of administrative remedies of 74 O.S. Supp.1999 § 1306(6)[2] and OAC 360:1-5-1

---

**1.** HMO is an abbreviation for health management organization. *Rollings v. Thermodyne Industries, Inc.*, 1996 OK 6, ¶ 17, 910 P.2d 1030. See also, 74 O.S. Supp.1999 § 1303(8); OAC 360:10-1-2 (1999). Traditionally, medical care in the United States has been provided on a "fee-for-service" basis-a physician charges for a service, billing either the patient or the insurer. Under this system, the physician balances the financial incentive to provide more services against the professional obligation to the patient to exercise reasonable medical care and judgment. Beginning in the late 1960's, new models for health-care developed based on managed care. *Pegram v. Herdrich*, 530 U.S. 211, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000). These managed care delivery systems are cost containment mechanisms instituted to alleviate runaway health care costs. J. McKee, "Liability of Third-party Health-Care Payor for Injury Arising from Failure to Authorize Required Treatment," 56 A.L.R. 5th 737, 744 (1998); W. Chittenden III, "Malpractice Liability & Managed Health Care: History & Prognosis," 26 Tort & Ins. L.J. 451 (1991). In these programs, a physician's financial interest lies in providing less care weighed against the professional obligation to supply the patient with covered services. *Pegram v. Herdrich*, this note, supra; J. Stern, "Bad Faith Suits Against HMOs: Finally, A Breakthrough," 20 Whittier L.Rev. 393 (1998); J. Bartimus & C. Wright, "HMO Liability: From Corporate Negligence Claims for Negligent Credentialing & Utilization Review to Bad Faith," 66 UMKC L.Rev. 762 (1998).
Chief among the managed care delivery systems are health maintenance organizations (HMOs) similar to the insurer here. HMOs, like other

risk-bearing organizations, endeavor to control costs. They do so by making coverage determinations, comparing requested services against contractual provisions. *Pegram v. Herdrich*, this note, supra. These new entities inject an intermediary between doctor and patient in setting medical care charges and in making payments. At the same time, the insurance industry offers administrative services to employers and contracts with doctors for services at set rates. Billions of dollars flow through these structures, generating equally large difficulties of governance and daily tensions between the quality and quantity of services provided. *Corporate Health Ins., Inc. v. Texas Dept. of Ins.*, 215 F.3d 526, 530 (5th Cir.2000), reh'g & reh'g *en banc* denied 220 F.3d 641 (5th Cir.2000).

**2.** Title 74 O.S. Supp.1999 § 1306(6) provides:

"The State and Education Employees Group Insurance Board shall administer and manage the group insurance plans and the flexible benefits plan and, subject to the provisions of the State and Education Employees Group Insurance Act, Section 1301 et seq. and the State Employees Flexible Benefits Act, Section 1341 et seq. of this title shall have the following powers and duties:
6. The establishment of a grievance procedure by which a three-member grievance panel shall act as an appeals body for complaints by insured employees regarding the allowance and payment of claims, eligibility, and other matters. Except for grievances settled to the satisfaction of both parties prior to a hearing, any person who requests in writing a hearing before the grievance panel shall receive a hear-

(1997)[3] extend to claims for bad faith.[4] Consistent with *Cannon v. Lane*, 1993 OK 40, ¶ 14, 867 P.2d 1235, we hold that a state employee may sue a health maintenance organization for bad faith breach of the insurance contract. Therefore, claims for bad faith are not subject to administrative exhaustion requirements. Although matters involving the allowance and payment of claims, eligibility for coverage and provision of services are within the initial consideration of the Grievance Panel pursuant to 74 O.S. Supp.1999 § 1303(6) and OAC 360:1–5–1 (1997), its province does not extend to issues concerning bad faith breach of an insurance contract. Under the facts presented, where the insured has received payment for contested medical services, we determine that the exhaustion requirements of 74 O.S. Supp. 1999 § 1306(6) do not apply to an action for breach of good faith.[5]

ing before the panel. The grievance procedure provided by this paragraph shall be the exclusive remedy available to insured employees having complaints against the insurer. Such grievance procedure shall be subject to the Oklahoma Administrative Procedures Act, Section 250 et seq. of Title 75 of the Oklahoma Statutes including provisions thereof for review of agency decisions by the district court. The grievance panel shall schedule a hearing regarding the allowance and payment of claims, eligibility and other matters within sixty (60) days from the date the grievance panel receives a written request for a hearing unless the panel orders a continuance for good cause shown. Upon written request by the insured employee to the grievance panel and received not less than ten (10) days before the hearing date, the grievance panel shall cause a full stenographic record of the proceedings to be made by a competent court reporter at the insured employee's expense;"

Because the present statutory scheme is identical to the 1996 version except to the extent that there is a difference in numbering within the section itself, references are to the current provisions of the statute.

3. Oklahoma Administrative Code § 306:1–5–1 (1997) providing in pertinent part:

"(a) **Aggrieved covered member.** Any covered member aggrieved regarding the allowance and payment of claims, eligibility and provision of service may request a hearing before the Grievance Panel [hereinafter referred to as Panel] to determine the validity of the grievance....

(b) **Aggrieved member covered by HMO.** Any member covered by an HMO is entitled to a hearing before the Panel in the same manner as all other covered members. The member must exhaust the HMOs [sic] internal grievance procedure, except for an emergency or if the HMO fails to timely respond, before requesting Board action....

(c) **Submission of Request for Hearing.** The Request for Hearing shall ... contain the following information:

... (4) Nature of claim: Health, Dental, Life, Disability or HMO;

(5) Date claim submitted for payment, claim number;

(6) The reason given, if any, by the claims administration contractor for denying the claim in whole or in part; and

(7) A short statement as to the nature of the illness or injury giving rise to the claim...."
[Emphasis in original.]

HMO members are entitled to hearings before the Grievance Panel in the same manner as all other covered members. However, except in emergencies or when the HMO fails to timely respond, the member must exhaust the HMO's internal grievance procedure before requesting a grievance hearing. Subsection (c) provides:

"**Aggrieved member covered by an HMO.** Any member covered by an HMO is entitled to a hearing before the Panel in the same manner as all other covered members. The HMO must exhaust the HMOs internal grievance procedure, except for an emergency or if the HMO fails to timely respond, before requesting Board action. The member must file, along with his request for hearing, a written certification from the HMO that the member has exhausted said procedure, or a detailed explanation of the emergency or of the HMOs failure to respond."

4. Walker attacked the exhaustion requirements of 74 O.S. Supp.1999 § 1306(6), see note, as violative of the Okla. Const. art. 2, § 19 and art. 5, § 46. Our holding that Walker is not prohibited from proceeding in district court negates the necessity of addressing her constitutional challenges to the administrative review process.

5. Courts considering exhaustion requirements involving bad faith claims against HMOs have reached differing results. Those not requiring exhaustion include: *Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951, 938 P.2d 903, 923–24, 64 Cal.Rptr.2d 843 (1997) [Exhaustion through arbitration not required where HMO causes unreasonable delays in the choice of an arbitrator.]; *McGraw v. Prudential Ins. Co. of America*, 137 F.3d 1253, 1263 (10th Cir.1998) [Although no statutory exhaustion requirement existed under ERISA, requirement had been applied as a matter of judicial discretion. However, in a lawsuit beginning as a state law claim for bad faith breach of an insurance contract, exhaustion was not required where delays in claim processing coupled with Plan Administrator's stake in claim denial would have rendered completion of administrative process futile.]; *Negron*

## FACTS

■ ¶ 2 Appellant Cynthia Walker, alleges that the appellees, Group Health Services, Inc. and GHS Health Maintenance Organization d/b/a/ BlueLincs HMO (collectively, insurer/HMO),[6] contracted with the State of Oklahoma to provide insurance coverage to state employees and their dependents. The appellant, Cynthia A. Walker (Walker/insured), was a member of the HMO as a dependent of her husband under the State and Education Employees Group Insurance Act [Group Insurance Act], 74 O.S.1991 § 1301, *et seq.* Walker is an employee of an elementary school.

¶ 3 On November 12, 1996, Walker became ill and lost consciousness at work. The school principal called an ambulance which transported Walker to the emergency room.[7] Because Walker's primary physician had not authorized the treatment and because the

HMO determined that the services were not rendered for an emergency or life-threatening condition, the insurer denied benefits.

¶ 4 Walker wrote the HMO on April 27, 1997, requesting that it reconsider her claim for benefits. Under the provisions of the HMO's member handbook, the insurer should have responded within 30 days.[8] However, the record indicates that it was more than three months later, on August 14, 1997, when the HMO upheld the original denial. In that letter, Walker was told that she could appeal the decision in writing to the BlueLincs Grievance Committee pursuant to her member services manual. Although Walker indicates that the denial was appealed, there is nothing in the record to demonstrate that she actually completed the HMO's internal grievance procedures, and she readily admits that she did not institute a grievance pursuant to 74 O.S. Supp.1999

*v. Patel,* 6 F.Supp.2d 366, 372 (E.D.Pa.1998) [Although court found that bad faith claims were preempted by FEHBA, it held that exhaustion requirements related only to "claims for unpaid benefits" and that a tort claim against the HMO for vicarious liability for negligent infliction of emotional distress was not subject to exhaustion requirements.]. See also, C. Menkel Meadow, "California Court Limits Mandatory Arbitration," 15 Alternative to High Cost Litg. 109, 123–24 (1997). But see, *Redmond v. Secure Horizons, Pacificare, Inc.,* 60 Cal.App.4th 96, 70 Cal. Rptr.2d 174, 178 (1997) [Exhaustion required for bad faith cause of action where regulations governing administrative procedures specifically provided for the award of money damages.]; *Williams v. HealthAmerica,* see note 25, *infra* [Insured not required to comply with grievance procedure where insurer did not adequately inform insured of the review process.]. See also, *Toledo v. Kaiser Permanente Medical Group,* 987 F.Supp. 1174, 1180 (1997) [Insureds could not sue for bad faith where HMO clearly advised insureds of binding arbitration provision. In Oklahoma, a subscriber agreement purporting to bind HMO member to arbitration is unenforceable. *Cannon v. Lane,* 1993 OK 40, ¶ 11, 867 P.2d 1235.].

6. On June 23, 2000, the HMO filed a motion to strike exhibits attached to Walker's objection filed to *amicus curiae* briefs. The exhibits were not a part of the record before the trial court and are not appropriate for consideration on appeal. Deficient record cannot be supplemented by material physically attached to an appellate brief. *Halliburton Oil Producing Co. v. Grothaus,* 1998 OK 110, ¶ 11, 981 P.2d 1244; *Dyke v. Saint Francis Hosp., Inc.,* 1993 OK 114, ¶ 10, 861 P.2d

295. See also, *Wofford v. Mental Health Servs., Inc.,* 1997 OK 116, ¶ 10, 946 P.2d 1149.

7. In her briefs before the trial court, in the petition in error and in her appellate briefs, Walker refers to an incident taking place on October 19, 1996, in which she experienced chest pains and shortness of breath. At that time, she asserts that she spoke with her provider's nurse and was instructed to go to the emergency room. The HMO refused payment for these services. Although Walker presents these facts as a part of her claim and as an indication of the HMO's bad faith on appeal, the first amended petition, filed on June 10, 1998, in the district court refers only to the facts taking place on November 12, 1996. The document provides in pertinent part:

"... 2. On November 12, 1996, Plaintiff became ill and lost consciousness at work. An ambulance was called on her behalf and she was taken to the hospital...."

Except to the extent that the instant cause becomes the settled law of the case, the parties are entitled to introduce additional evidence, supplement the pleadings and expand the issues on remand. *Parker v. Elam,* 1992 OK 32, ¶ 13, 829 P.2d 677. See also, *Robert L. Wheeler, Inc. v. Scott,* 1991 OK 95, ¶ 8, 818 P.2d 475.

8. The pertinent provisions of the Member Services Handbook are contained on p. 000070 of the record and provide in pertinent part:

"... An official resolution by BlueLincs HMO shall be made no later than 30 calendar days following the date the complaint was initially received in the BlueLincs HMO offices...."

§ 1306(6).[9] Rather, she hired an attorney who wrote the HMO on September 8, 1997, requesting information necessary to file an appeal with the insurer.[10]

¶ 5 In the interim between the HMO's denial of Walker's claim and the involvement of her attorney, Walker was sued by the medical providers. The providers prevailed, and Walker's paycheck was garnished. Finally, the provider's judgment was satisfied fully in connection with Walker's attempt to buy a home.

¶ 6 On November 24, 1997, Walker received notification that payment had been made for the contested medical expenses. Thereafter, on June 10, 1998, in her first amended petition, Walker filed suit in district court for breach of the implied covenant of good faith and fair dealing. Alleging that Walker had not exhausted administrative procedures imposed by the insurance contract and by the Group Insurance Act, the HMO filed a suggestion for dismissal and/or motion to dismiss for lack of subject matter jurisdiction on July 30, 1999. The trial judge, Honorable Carolyn R. Ricks, sustained the motion on February 16, 2000, dismissing the cause on jurisdictional grounds. We retained the cause on March 19, 2000. The *amicus curiae*,[11] Oklahoma State & Education Employees Group Insurance Board (Insurance Board/*amicus curiae* ), was allowed to join in the court ordered briefing cycle completed on June 26, 2000.[12]

## LEGAL DEVELOPMENTS CONCERNING HEALTH MAINTENANCE ORGANIZATIONS AND THE HEALTH INSURANCE INDUSTRY.

¶ 7 Although managed care systems have been with us for many years, the systems, and HMOs in particular, have recently been the subject of legal developments in the nation's courts and legislative bodies. Just this session, the United States Supreme Court was presented with three cases dealing with HMOs. In *Pegram v. Herdrich*, 530 U.S. 211, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000), the Supreme Court held that mixed treatment and eligibility decisions made by HMO physicians were not fiduciary decisions under the Employee Retirement Income Security Act of 1974 (ERISA). In so doing, it upheld dismissal of a federal suit against the HMO but did not bar state law claims of malpractice.[13] The Court also determined that patients could not use federal law to sue HMOs for giving doctors a financial incentive to cut treatment costs.[14]

9. Title 74 O.S. Supp.1999 § 1306(6), see note, supra. Walker's brief in chief providing in pertinent part at pp. 1–2:
    "... It is undisputed that Mrs. Walker filed this original action without having presented a claim for bad faith or punitive damages through completion of her insurer's internal grievance procedure, nor did she present such a claim through the Oklahoma State and Education Employees Group Insurance Board ('OSEEGIB')...."

10. The letter, authored by Jeff A. Lee, is dated September 8, 1997, and provides in pertinent part:
    "... The August 14, 1997 denial letter stated Ms. Walker had a right to submit her appeal in writing. Before we can accomplish this in a meaningful manner, my client needs the following information to properly prepare her statement of appeal of the informal denial of her claims ..."

11. Rule 1.12, Supreme Court Rules, 12 O.S. Supp.1999, Ch. 15, App. 1.

12. The Oklahoma State and Education Employees Group Insurance Board was allowed to engage in the briefing process as *amicus curiae*.

On June 12, 2000, Walker filed an objection to the Board's request to file a response brief. Attached to that objection were a number of letters which do not appear in the record. A party may not supplement the record on appeal by injecting into it material that was not before the trial court. *United States Through Farmers Home Admin. v. Hobbs*, 1996 OK 77, ¶ 5, 921 P.2d 338; *Dyke v. Saint Francis Hosp.*, see note 6, supra; *Hulsey v. Mid–America Preferred Ins. Co.*, 1989 OK 107, ¶ 6, 777 P.2d 932.

13. In *Kincade v. Group Health Serv. of Oklahoma, Inc.*, 1997 OK 88, ¶ 20, 945 P.2d 485, we held that the Federal Employees Health Benefit Act (FEHBA), 5 U.S.C. § 8902(m)(1) (1978), did not preempt state-law causes of action that arise in the performance of a health insurance plan such as a tort action arising out of an insurer's bad faith refusal to pay a valid claim.

14. Recently, Texas settled a lawsuit filed against Aetna and HMOs operating under the insurer's umbrella. As a part of the agreement, Aetna agreed that it would not enter into any financial incentive arrangement that "... penalizes Individual Physicians, Individual Health Care Provid-

¶ 8 In *Pappas v. Asbel*, 555 Pa. 342, 724 A.2d 889 (1998), the Pennsylvania Supreme Court held that ERISA did not preempt state tort law claims brought against an HMO. Pappas alleged that the HMO was negligent in refusing approval of his transfer to a facility specifically identified as necessary to address a neurological emergency resulting in his becoming a quadriplegic. The United States Supreme Court granted certiorari in the cause and remanded it to the Pennsylvania Court for consideration in light of *Pegram.*[15]

¶ 9 The third cause, *In re United States Healthcare, Inc.*, 193 F.3d 151, 163 (3rd Cir. 1999), involved claims of inadequate care offered to an infant immediately following birth. The Third Circuit determined that federal law did not bar state law tort claims relating to quality of care although lawsuits concerning erroneously withheld benefits were preempted. Without comment, the United States Supreme Court denied certiorari[16] in the cause on the same day that *Pappas* was remanded.

¶ 10 The 106th Congress has struggled with bills providing limited new patient protections, including a restricted right to sue HMOs. Although the Senate voted to incorporate proposed House guarantees on June 22, 2000, it has since indefinitely postponed consideration of the measure.[17] Most recently, the President has advised the nation of orders he is issuing to the United States Department of Labor to promulgate rules providing a fair and unbiased process for patients to appeal when coverage is denied or delayed.[18]

¶ 11 The Oklahoma Legislature passed the Managed Health Care Reform and Accountability Act (Managed Health Care Act), 36 O.S. Supp.2000 § 6591, *et seq.*[19] on April 24, 2000, which became law on April 28th after being signed by the Governor.[20] Although all parties agree that the legislation is inapplicable here,[21] it is instructive to note that

ers, or Primary Care Physician Groups for incurring expenses that are medically necessary or make additional compensation available for limiting medically necessary health care services." M. Bidart, "Will AETNA Settlement in Texas Curre [sic] What Ails Managed Care?", 11 MLRMCLR 24 (2000).

15. *United States Healthcare Sys. of Pennsylvania v. Pennsylvania Hosp. Ins. Co.*, 530 U.S. 1241, 120 S.Ct. 2686, 147 L.Ed.2d 959 (2000).

16. *United States Healthcare, Inc. v. Bauman*, 530 U.S. 1242, 120 S.Ct. 2687, 147 L.Ed.2d 960 (2000).

17. On June 22, 2000, the Senate incorporated HR4577 as an amendment. The Senate voted by unanimous consent on June 30, 2000, to indefinitely postpone consideration of the measure (S6293). Thomas, *Bill Summary & Status*, 106th Congress (2000).

18. Radio Address by the President to the Nation on Voting 11/04/00, released by the White House Office of Communications, providing in pertinent part:

"... We all know that medical decisions should be made by doctors and nurses, not accountants, and that health plans too often do deny vital care and do delay appeals for months on end. There is now a bipartisan majority in Congress ready to pass a real, enforceable patients' bill of rights to deal with problems like these.... As President, there are steps I can take to move us forward and today I am taking an important one. I'm directing

the Labor Department to issue final rules within two weeks requiring private health plans covering 130 million Americans to provide a fair and unbiased process for patients to appeal when coverage has been denied or delayed...."

19. We note that portions of a similar Texas statute have recently been struck down as being preempted by federal law. In *Corporate Health Ins., Inc. v. Texas Dept. of Ins.*, see note 1 at 539, supra, the 5th Circuit held that independent review provisions of the Texas statute were preempted while liability provisions for health services actually delivered rather than those involving coverage dispute were not barred by federal law.

20. S.B. 1206 (April 24, 2000) provides in § 8:

"It being immediately necessary for the preservation of the public peace, health and safety, an emergency is hereby declared to exist, by reason whereof this act shall take effect and be in full force from and after its passage and approval."

21. Walker's brief addressing S.B. 1206 provides in pertinent part at p. 8:

"... Oklahoma's Legislature has enacted a new law creating a new statutory duty and liability for managed health care entities relating to the care to be exercised in making health care treatment decisions ... However, it is equally clear that this new statutory duty and liability is something separate and distinct

the Managed Health Care Act imposes a duty on HMOs to exercise ordinary care when making health care treatment decisions and imposes liability for damages caused to an HMO member by the duty's breach.[22] Here, issues of provision of care are not presented making the Managed Health Care Act applicable. Nevertheless, where the Managed Health Care Act applies, HMOs may be sued once the enrollee has exhausted appeal and review processes available under the insurer's plan and those provided by the Oklahoma Managed Care External Review Act, 63 O.S. Supp.2000 § 2528.1 *et seq.*[23]

## I.

¶12 **CONSISTENT WITH *CANNON V. LANE*, A STATE EMPLOYEE MAY MAINTAIN A CAUSE OF ACTION FOR BAD FAITH AGAINST A HEALTH MAINTENANCE ORGANIZATION.**

¶13 Walker relies on *Cannon v. Lane*, 1993 OK 40, ¶14, 867 P.2d 1235 for the proposition that state employees may bring bad faith actions against their HMOs. Although the insurer does not assert that Walker's cause of action is abrogated by the Group Insurance Act, it does argue that the review process mandated in 74 O.S. Supp. 1999 § 1306(6) militates against recognition

of bad faith actions in the context of contracts negotiated under the Act. We disagree.

¶14 *Cannon*, like the situation here, involved a state employee's suit against an HMO for bad faith. Both the HMO in *Cannon* and the insurer here contracted with the state to provide medical care to state employees and their dependents. The issue in *Cannon* was whether the HMO was an insurance company within the meaning of the Uniform Arbitration Act, 15 O.S. § 801 *et seq.* In *Cannon*, we discussed the similarities between HMOs and health insurance organizations finding that the contract between the employer, the State of Oklahoma and the HMO was a contract with reference to insurance. Determining that the HMO qualified as an insurance company under the Act, the Court held that the insurance contract was expressly excluded from the statutory provisions and invalidated the portion of the subscriber agreement purporting to bind the HMO member to compulsory arbitration.

¶15 We recognize that the Group Insurance Act and the exhaustion requirements of 74 O.S. Supp.1999 § 1306(6) were not at issue in *Cannon*. Nevertheless, this Court issued a writ prohibiting the trial court from enforcing the arbitration order, and the insured state employee was allowed to proceed with

from the common law duty involved in the tort of bad faith....''

The insurer's brief addressing S.B. 1206 provides in pertinent part at p. 2:
"... SB 1206 ... creates a new *negligence* cause of action ... SB 1206 would therefore have no impact on the Appellant's bad faith claim-or the issue of whether Appellant must exhaust OSEEGIB's administrative processes with respect to such claim ..." [Emphasis in original.]

The brief of the *amicus curiae* provides in pertinent part at p. 1:
"... The amicus brief is limited to the effect of Senate Bill 1206 on the pending appeal. OSEEGIB, as suggested in the Application previously filed, states that this legislation does not impact on the exhaustion requirements of 74 O.S. Supp.1999, § 2306(6), and has no impact on the pending appeal...."

22. S.B. 1206 (April 24, 2000) provides in pertinent part in § 3:
"... A. A health insurance carrier, health maintenance organization, or other managed care entity for a health care plan has the duty

to exercise ordinary care when making health care treatment decisions and shall be liable for damages for harm to an enrollee proximately caused by breach of the duty to exercise ordinary care if:
1. The failure to exercise ordinary care results in the denial, significant delay, or modification of the health care service recommended for, or furnished to, an enrollee; and
2. The enrollee suffered harm...."

23. S.B. 1206 (April 24, 2000) provides in pertinent part in § 4:
"... A. A person may not maintain a cause of action under this act against a health insurance carrier, health maintenance organization, or other managed care entity unless the affected enrollee or the representative of the enrollee, has exhausted any appeal and review process applicable under the utilization review requirements of the plan, has exhausted all applicable remedies specified in the Oklahoma Managed Care External Review Act and gives written notice of the claim as provided in subsection B of this section...."

the bad faith action. The net result of *Cannon* was a recognition that state employees may bring tort actions against their HMOs.[24] Consistent with that determination, we hold that a state employee may sue a health maintenance organization for bad faith breach of the insurance contract.[25]

## II.

¶ 16 PURSUANT TO 74 O.S. Supp.1999 § 1303(6) AND OAC 360:1–5–1 (1997), THE AUTHORITY OF THE GRIEVANCE PANEL IS LIMITED TO MATTERS INVOLVING THE ALLOWANCE AND PAYMENT OF CLAIMS, ELIGIBILITY FOR COVERAGE AND PROVISION OF SERVICES. CLAIMS FOR BAD FAITH ARE NOT SUBJECT TO ADMINISTRATIVE EXHAUSTION REQUIREMENTS. THEREFORE, UNDER THE FACTS PRESENTED—WHERE THE INSURED HAS RECEIVED PAYMENT FOR DISPUTED MEDICAL EXPENSES—THE EXHAUSTION REQUIREMENTS OF § 1306(6) DO NOT APPLY TO A BAD FAITH SUIT.

¶ 17 The insured contends that the exclusive grievance procedures contained in the Group Insurance Act are inapplicable to a tort action for bad faith breach of an insurance contract. Additionally, Walker maintains that because she has already been paid her insurance benefits, exhaustion would be futile. The HMO asserts that the mandatory exhaustion requirements of 74 O.S. Supp.1999 § 1306(6) are broad enough to encompass tort actions. Because Walker did not pursue administrative remedies, the insurer argues that the district court "lacked jurisdiction."

¶ 18 The insurer relies on *Lincoln Income Life Ins. Co. v. Wood*, 1976 OK 140, ¶ 6, 556 P.2d 602 both for the proposition that administrative exhaustion is required before a state employee may make a claim against its insurer in district court and in support of the argument that the statutory exhaustion procedures are adequate to encompass claims for bad faith. In *Lincoln*, a state employee filed an action in district court to recover medical expenses and for damage to her reputation. The employee alleged that the insurer's agent assured her that her medical expenses would be covered under the group plan. After refusing to dismiss the cause, the trial court certified the question of whether exhaustion of administrative remedies was a prerequisite to proceeding in district court. The *Lincoln* court held that the

24. Long before our decision in *Cannon v. Lane*, 1993 OK 40, ¶ 14, 867 P.2d 1235, we determined that an insurer's breach of good faith was actionable. *McCorkle v. Great Atl. Ins.*, 1981 OK 128, ¶ 27, 637 P.2d 583. See also, *Goodwin v. Old Republic Ins. Co.*, 1992 OK 34, ¶ 6, 828 P.2d 431; *Roach v. Atlas Life Ins. Co.*, 1989 OK 27, ¶ 8, 769 P.2d 158.

25. Oklahoma is not alone in determining that HMOs, like insurance companies generally, may be liable for bad faith breach of the insurance contract. See, *Long v. Great West Life & Annuity Ins. Co.*, 957 P.2d 823, 828 (Wyoming 1998) [Recognizing the concept that if the law requires a complaint system for utilization review decisions, the insurer must act in good faith in administering the complaint system that it has established.]; *McEvoy v. Group Health Coop. of Eau Claire*, 213 Wis.2d 507, 570 N.W.2d 397, 400 (1997) [Tort of bad faith applies to all HMO's making out-of-network benefit decisions.]; *Sarchett v. Blue Shield of California*, 43 Cal.3d 1, 729 P.2d 267, 277, 233 Cal.Rptr. 76) (1987) [Action against health plan service provider for bad faith allowed where it repeatedly denied claims without advising the insured of the right to peer review and arbitration.]; *Williams v.*

*HealthAmerica*, 41 Ohio App.3d 245, 535 N.E.2d 717, 720 (1987) [HMO's failure to provide full information as to its grievance procedure sufficient evidence of bad faith.]; *Rederscheid v. Comprecare, Inc.*, 667 P.2d 766 (Colo.Ct.App. 1983) [Trial court erred in dismissing claim premised on HMO's alleged bad faith failure to exercise due care in discharge of contractual duties.]; *Couch on Insurance* 3rd, 14 Couch on Ins. § 20752 (1999); J. Stern, "Bad Faith Suits Against HMOs: Finally, A Breakthrough", 20 Whittier L.Rev. 313 (1998); J. Bartimus and C. Wright, "HMO Liability: From Corporate Negligence Claims for Negligent Credentialing and Utilization Review to Bad Faith", 66 UMKC L.Rev. 763, 772 (1998). See also, *American Health Care Providers, Inc. v. O'Brien*, 318 Ark. 438, 886 S.W.2d 588, 590 (1994) [Issue of whether HMO might be subjected to bad faith not determined because of lack of evidence on the issue.]; *Humana Hospital–Bayside v. Lightle*, 305 S.C. 214, 407 S.E.2d 637, 639 (1991) [Issue of whether HMO might be subjected to bad faith not determined where evidence of bad faith was not presented.].

statutory grievance procedure was sufficiently broad to determine the dispute concerning policy coverage and any representations made by the insurer's agent. The opinion does not comment on the insured's claim relating to her injured reputation.

¶ 19 We agree with the HMO that when coverage issues are the core of a claim, the Group Insurance Act and our decision in *Lincoln* require exhaustion of administrative remedies. However, one material fact distinguishes this cause from *Lincoln.* Here, the insured has received payment for the contested medical expenses. *Lincoln* applies to situations in which medical claims are unpaid. Nothing in the opinion mandates that bad faith issues must be subjected to the administrative review process.

¶ 20 **A. Because it is unclear under 74 O.S. Supp.1999 § 1306(6) which issues are encompassed within the term "other matters," the statute is ambiguous and subject to construction.**

¶ 21 The Legislature created the Group Insurance Board to administer and manage group insurance and flexible benefit plans for state employees and retirees. The Board has extensive responsibilities, including: 1) controlling the offered benefits; 2) determining the eligibility of employees and dependents for coverage; 3) overseeing the competitive bid process; 4) contracting with qualified HMOs; 5) hiring a claims manager; 6) instituting a claims process; and 7) overseeing payroll deductions.[26]

¶ 22 Most important here, is the Board's duty to establish a grievance procedure and panel (Grievance Panel) to hold hearings regarding complaints of insured employees. Title 74 O.S. Supp.1999 § 1306(6) provides in pertinent part:

"The State and Education Employees Group Insurance Board ... shall have the following powers and duties:

... 6. **The establishment of a grievance procedure by which a three-member grievance panel shall act as an appeals body for complaints by insured employees regarding the allowance and payment of claims, eligibility, and other matters.... The grievance procedure provided by this paragraph shall be the exclusive remedy available to insured employees having complaints against the insurer .** Such grievance procedure shall be subject to the Oklahoma Administrative Procedures Act, Section 250 et seq. of Title 75 of the Oklahoma Statutes including provisions thereof for review of agency decisions by the district court...." [Emphasis added.]

¶ 23 The HMO stresses that the highlighted language is clear and unambiguous and that it is not subject to judicial interpretation.[27] It argues that the Legislature's use of the mandatory term, "shall", makes it clear that all controversies between an insured and the insurer must be presented to the Grievance Panel before they may be appealed to the district court. The insurer emphasizes that the statutory language referring to the resolution of complaints involving the payment of claims, eligibility and "other matters" is sufficiently broad to cover allegations of bad faith.

¶ 24 In determining whether a statute applies to a given set of facts, we focus on legislative intent[28] which controls statutory interpretation.[29] Intent is ascertained from the whole act in light of its general purpose and objective[30] considering relevant provisions together to give full force and effect to each.[31] The Court presumes that the Legis-

26. Title 74 O.S. Supp.1999 § 1306.

27. *Nealis v. Baird,* 1999 OK 98, ¶ 55, 996 P.2d 438.

28. *Nealis v. Baird,* see note 27, supra; *Cooper v. State ex rel. Dept. of Public Safety,* 1996 OK 49, ¶ 10, 917 P.2d 466.

29. *Smicklas v. Spitz,* 1992 OK 145, ¶ 8, 846 P.2d 362; *Clifton v. Clifton,* 1990 OK 88, ¶ 7, 801 P.2d 693; *Fuller v. Odom,* 1987 OK 64, ¶ 4, 741 P.2d 449.

30. *McSorley v. Hertz Corp.,* 1994 OK 120, ¶ 6, 885 P.2d 1343; *Oglesby v. Liberty Mut. Ins. Co.,* 1992 OK 61, ¶ 8, 832 P.2d 834; *Smicklas v. Spitz,* see note 29, supra.

31. *Haney v. State,* 1993 OK 41, ¶ 5, 850 P.2d 1087; *Public Serv. Co. of Oklahoma v. State ex rel. Corp. Comm'n,* 1992 OK 153, ¶ 8, 842 P.2d 750.

lature expressed its intent and that it intended what it expressed.[32] Statutes are interpreted to attain that purpose and end [33] championing the broad public policy purposes underlying them.[34] Only where the legislative intent cannot be ascertained from the statutory language, i.e. in cases of ambiguity or conflict, are rules of statutory construction employed.[35]

¶25 The language of § 1306(6) is not so clear as to be beyond interpretation. The use of "shall" generally signifies a legislative command.[36] Nevertheless, the term can be permissive.[37] Although the Legislature used the normally mandatory directive of "shall" in indicating that grievances are to be considered by the Grievance Panel before they are subject to review in the district court, the reference to allowance and payment of claims, eligibility and "other matters" is not so definite that it is beyond judicial consideration-it is unclear from the language employed which issues are directed to be within the province of the Grievance Panel.

¶26 **B. Through adoption of OAC 360: 1–5–1 (1997), the Insurance Board has limited the issues subject to administrative review. The matters falling within the province of the Grievance Panel include allowance and payment of claims, eligibility and provision of services. Bad faith claims do not fall within the province of the Grievance Panel.**

¶27 The Legislature may delegate rule making authority to agencies, boards and commissions to facilitate the administration of legislative policy pursuant to the Administrative Procedures Act, 75 O.S. 1991 § 250 *et seq.*[38] Administrative rules are valid expressions of lawmaking powers having the force and effect of law.[39] Administrative rules, like statutes, are given a sensible construction bearing in mind the evils intended to be avoided.[40] The Group Insurance Board is authorized to promulgate rules and procedures to carry out its duties.[41] In connection with its responsibility to conduct grievance hearings, the Board promulgated OAC 360:1–5–1(1997) [42] providing that any covered member may request a hearing before the Board's Grievance Panel.

**32.** *Minie v. Hudson,* 1997 OK 26, ¶7, 934 P.2d 1082; *Fuller v. Odom,* see note 29, supra; *Darnell v. Chrysler Corp.,* 1984 OK 57, ¶5, 687 P.2d 132.

**33.** *Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City,* 1995 OK 62, ¶5, 901 P.2d 800, cert. denied, 516 U.S. 1029, 116 S.Ct. 674, 133 L.Ed.2d 523 (1995); *Wilson v. State of Oklahoma ex rel. Oklahoma Tax Comm'n,* 1979 OK 62, ¶5, 594 P.2d 1210; *Affiliated Mgt. Corp. v. Oklahoma Tax Comm'n,* 1977 OK 183, 570 P.2d 335.

**34.** *Haggard v. Haggard,* 1998 OK 124, ¶1, 975 P.2d 439; *Price v. Southwestern Bell Tel. Co.,* 1991 OK 50, ¶7, 812 P.2d 1355.

**35.** *State ex rel. Dept. of Human Serv. v. Colclazier,* 1997 OK 134, ¶9, 950 P.2d 824; *Matter of Estate of Flowers,* 1993 OK 19, ¶11, 848 P.2d 1146.

**36.** *United States Through Farmers Home Admin. v. Hobbs,* 1996 OK 77, ¶7, 921 P.2d 338; *State ex rel. Macy v. Freeman,* 1991 OK 59, ¶8, 814 P.2d 147; *Forest Oil Corp. v. Corp. Comm'n,* 1990 OK 58, ¶26, 807 P.2d 774.

**37.** *Minie v. Hudson,* see note 32, supra; *Texaco, Inc. v. City of Oklahoma City,* 1980 OK 169, ¶9, 619 P.2d 869.

**38.** Title 75 O.S.1991 § 250.2.

**39.** Title 75 O.S. Supp.1997 § 308.2 provides in pertinent part:

"A. No agency rule is valid or effective against any person or party, or may be invoked by the agency for any purpose, until it has been promulgated as required in the Administrative Procedures Act.
... C. Rules shall be valid and binding on persons they affect, and shall have the force of law unless amended or revised or unless a court of competent jurisdiction determines otherwise. Except as otherwise provided by law, rules shall be prima facie evidence of the proper interpretation of the matter to which they refer."

*Indiana Nat'l Bank v. State Dept. of Human Serv.,* 1993 OK 101, ¶13, 857 P.2d 53.

**40.** *Oklahoma Alcoholic Beverage Control Bd. v. Burris,* 1980 OK 58, ¶13, 626 P.2d 1316, 20 A.L.R.4th 593.

**41.** Title 74 O.S. Supp.1999 § 1306(13); 74 O.S. Supp.1996 § 1304(12).

**42.** Oklahoma Administrative Code § 306:1–5–1 (1997), see note 3, supra.

¶ 28 The agency rule tracks the language of § 1306(6) in relation to the "allowance and payment of claims" and "eligibility." However, in place of the ambiguous term "other matters", the administrative rule uses the phrase "provision of services"—indicating an eligible member's entitlement to medical attention. Through the adoption of OAC 360:1–5–1 (1997), the Insurance Board construed the term "other matters" narrowly giving a specific definition to the generalized legislative reference, "other matters". The Insurance Board's utilization of the more specific term—provision of services—reflects no intent for tort claims to fall within the province of the Grievance Panel.

¶ 29 Statutory construction by agencies charged with the law's enforcement is given persuasive effect especially when made *shortly after* the statute's enactment.[43] Through the promulgation of OAC 360:1–5–1, the Insurance Board has clarified the ambiguity associated with the Legislature's use of the term "other matters" in § 1306(6). The administrative rule clearly places coverage, eligibility and service related matters associated with the payment of claims within the province of the Grievance Panel. The rule does not authorize the Grievance Panel to address bad faith claims or to award damages appropriate to tort actions.

¶ 30 **C. The Legislature has acquiesced in the Insurance Board's narrow interpretation of 74 O.S. Supp.1999 § 1306(6).**

¶ 31 In limiting the nature of the claims falling within its primary jurisdiction to those involving allowance and payment of claims, eligibility and provision of services,[44] the Insurance Board utilized the same language in both the 1995[45] and 1997 versions

of the rule. Section 1306 of title 74 has been amended six times since it was originally enacted in 1967. In each revision, § 1306 has utilized language identical to the 1999 version in relation to the issues subject to consideration by the Grievance Panel—"allowance and payment of claims, eligibility, and other matters." [46]

¶ 32 Under the Administrative Procedures Act, the Legislature may: 1) approve, delay, suspend, veto or amend any rule or proposed rule under review by joint resolution; [47] 2) disapprove a permanent or emergency rule at any time if it determines the rule to be inconsistent with legislative intent; [48] or 3) make an emergency rule ineffective through its disapproval.[49] Once administrative rules are promulgated and successive legislative sessions are convened with no action to reject a rule, the Legislature's silence is regarded as proof of the lawmakers' consent.[50] The Legislature is deemed to have adopted an administrative construction when it amends or re-enacts a relevant statute without overriding the administratively-imposed construction.[51]

¶ 33 Through the promulgation of OAC 360:1–5–1, the Insurance Board has construed 74 O.S. Supp.1999 § 1306(6) narrowly. It has limited the matters subject to review by the Grievance Panel to those involving allowance and payment of claims, eligibility and provisions of services. It has not extended its province to the consideration of bad faith breach of the insurance contract. The Legislature has had multiple opportunities to alter the construction placed on § 1306(6) by the agency rule. It has failed to do so. Rather, it has adopted the Insurance Board's interpretation of the statute.

43. *Schulte Oil Co., Inc. v. Oklahoma Tax Comm'n*, 1994 OK 103, ¶ 4, 882 P.2d 65. The language found in § 1306(6), first appeared in legislation passed in 1996. The administrative rule followed the next year. See note 2, supra.

44. OAC 360:1–5–1 (1997), see note 3, supra.

45. OAC 360:1–5–1 (1995), amended at 12 OK Reg. 2539.

46. Title 74 O.S. Supp.1967 § 1306(f).

47. Title 75 O.S.1991 § 250.2.(B)(4).

48. Title 75 O.S.1991 § 250.2.(B)(6).

49. Title 75 O.S. Supp.1999 § 253(H).

50. *Peterson v. Oklahoma Tax Comm'n*, 1964 OK 78, ¶ 16, 395 P.2d 388.

51. *Branch Trucking Co. v. State ex rel. Oklahoma Tax Comm'n*, 1990 OK 41, ¶ 6, 801 P.2d 686; *Oral Roberts Univ. v. Oklahoma Tax Comm'n*, 1985 OK 97, ¶ 17, 714 P.2d 1013.

¶ 34 **D. Under the facts presented, where the insured has received payment for contested medical services, we determine that the exhaustion requirements of 74 O.S. Supp.1999 § 1306(6) are inapplicable to actions for bad faith.**

¶ 35 Our determination that the Grievance Panel has no authority to determine actions in bad faith does not end the inquiry into the necessity of exhaustion of administrative remedies. On November 24, 1997, the HMO paid the contested medical expenses. Nevertheless, the insurer contends that payment is insufficient to support a finding of liability under the contract. It argues that even if the Grievance Panel cannot award damages consistent with a bad faith claim, exhaustion of the administrative process is necessary to determine liability. Without this determination, the insurer asserts, there is no basis for a bad faith claim. Walker counters that pursuing administrative remedies to achieve a goal she has already acquired—payment for her medical expenses—would be so futile as to be excluded from the general requirement that exhaustion of administrative remedies are a prerequisite for resort to the courts. Under the facts presented, we agree.

¶ 36 The HMO finds support for the necessity of exhausting the underlying coverage issue before the Grievance Panel in the doctrine of primary jurisdiction.[52] The doctrine governs the allocation of cognizance between a court and an administrative agency. The doctrine does not necessarily allocate power between courts and agencies. Rather, it governs only the question whether the court or agency will initially decide a particular issue—not which entity will finally decide the cause. The doctrine comes into play whenever adjudication of the claim calls for resolution of issues which, under a regulatory scheme, are placed within the special competence of an administrative agency. When applicable, the doctrine results in judicial process being suspended pending disposition of the issues referred to an administrative body.[53] The insurer's argument insofar as based on primary jurisdiction is inconsistent with its district court position that was grounded in the district court's *absence of jurisdiction* in its entirety.

¶ 37 Essentially, the HMO asserts that only the Grievance Panel has the authority to determine liability for the medical expenses incurred and that such a finding is a prerequisite to Walker's bad faith action. Under the insurer's analysis, Walker cannot proceed in district court because the Grievance Panel has not made a coverage determination. In making the argument, the HMO insists that payment of the medical expenses should not be construed as an admission of liability. We agree that the mere payment of the disputed medical expenses is insufficient for a determination of contractual liability. After receiving the letter from Walker's attorney, the insurer may well have decided that settling the cause would be preferable to incurring further expenses in its defense.[54]

¶ 38 Generally, exhaustion of administrative remedies is a prerequisite to resort to the courts.[55] Further, it is well established in Oklahoma law that, where applicable, exhaustion of statutory remedies is a remedial bar to resort to the courts.[56] Nevertheless, the exhaustion doctrine is a

52. We first invoked the primary jurisdiction doctrine without adopting it in *Stipe v. Theus,* 1979 OK 153, ¶¶ 14–15, 603 P.2d 347.

53. *Fent v. Oklahoma Natural Gas Co.,* 1994 OK 108, ¶ 19, 898 P.2d 126. See also, *Maislin Ind. v. Primary Steel, Inc.,* 497 U.S. 116, 110 S.Ct. 2759, 2762, 111 L.Ed.2d 94 (1990); *Sears, Roebuck & Co. v. San Diego Cty.,* 436 U.S. 180, 98 S.Ct. 1745, 1758, 56 L.Ed.2d 209 (1978); *Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 96 S.Ct. 1978, 1986–87, 48 L.Ed.2d 643 (1976); *United States v. Western Pacific R.R. Co.,* 352 U.S. 59, 77 S.Ct. 161, 164, 1 L.Ed.2d 126 (1956); *Marshall v. El Paso Natural Gas Co.,* 874 F.2d 1373, 1376–77 (10th Cir.1989),

54. Nothing in the record before the Court is determinative of the coverage issue. Although Walker argues that receipt of Explanation of Benefit forms in association with payment of the medical expenses constitutes a showing of payment pursuant to the contract, those forms do not appear in the record.

55. *Arbuckle Abstract Co. v. Scott,* 1998 OK 125, ¶ 15, 975 P.2d 879; *Lone Star Helicopters, Inc. v. State,* 1990 OK 111, ¶ 6, 800 P.2d 235.

56. *Atkinson v. Halliburton Co.,* 1995 OK 104, ¶ 12, 905 P.2d 772.

prudential rule rather than a jurisdictional bar.[57] The doctrine presents a remedial barrier to judicial proceedings when an agency's rule-prescribed administrative review process is not pursued to conclusion.[58] Where administrative remedies are unavailable, ineffective or futile to pursue, the administrative process may be bypassed.[59]

¶ 39 *Lone Star Helicopters, Inc. v. State of Oklahoma*, 1990 OK 111, ¶ 6, 800 P.2d 235 teaches that the exhaustion doctrine will not bar a district court action that bypasses an agency's own rule-prescribed mode for processing a complaint if the administrative remedy is unavailable, ineffective or would be futile to pursue. Here, the Insurance Board has no power to give the relief Walker seeks under the tort rubric. The Insurance Board cannot award damages for bad faith breach of the insurance contract. Therefore, under this Court's reasoning in *Lone Star*, the exhaustion doctrine is inapplicable.

¶ 40 Under *Lincoln Income Life Ins. Co. v. Wood*, it is unquestioned that the Grievance Panel has exclusive initial authority to determine an insured's right to receive payment for contested medical expenses. Nevertheless, Walker has no claim which would make the administrative remedy appropriate to resolution of the bad faith action. Having previously received payment for her insurance claim, she has nothing to litigate before the Grievance Panel. Pursuant to our reasoning in *Lone Star*, supra, the inability of the Insurance Board to award the relief sought makes the exhaustion doctrine inapplicable. Our determination that Walker's bad faith action is not cognizable by the Grievance Panel coupled with the fact that she has previously been paid for her medical expenses prohibits invocation of the exhaustion of remedies doctrine.[60]

¶ 41 If in the course of post-remand proceedings the trial court should conclude that the *controversy* over the amount of benefits due the insured *remains unsettled* and be requested that the doctrine of primary jurisdiction be invoked to allow some issues in this case, which are within the agency's authority and expertise, to be resolved there, today's pronouncement would pose *no* barrier to the lower court's exercise of sound discretion in its ordered deference to an agency's determination of some issues that are within the limits of the latter's statutory powers.

## CONCLUSION

¶ 42 Our determination that exhaustion is excused in the instant cause should not be read to undermine the primary authority of the Grievance Panel to address causes when payment for medical expenses remain at issue. In such situations, the holding of *Lincoln Income Life Ins. Co. v. Wood*, 1976 OK 140, ¶ 6, 556 P.2d 602 applies—state employees with outstanding medical claims must exhaust the applicable administrative remedies before proceeding in district court. Nevertheless, exhaustion of administrative procedures is inapplicable here because: 1) the authorized administrative remedy is inadequate to vindicate a bad faith claim for breach of the insurance contract; 2) exhaustion of administrative remedies is a remedial rather than a jurisdictional concept; and 3) resort to the administrative remedy was rendered useless by the voluntary payment of insurance proceeds settling the amount in controversy.

## REVERSED AND REMANDED.

¶ 43 ALL JUSTICES CONCUR.

57. *Strate v. A–1 Contractors*, 520 U.S. 438, 117 S.Ct. 1404, 1412, 137 L.Ed.2d 661 (1997); *Lone Star Helicopters, Inc. v. State*, see note 55, supra.

58. *Tinker Investment & Mortgage Corp. v. City of Midwest City*, 1994 OK 41, ¶¶ 11–14, 873 P.2d 1029; *Lone Star Helicopters, Inc. v. State*, see note 54, supra. See, *Atkinson v. Halliburton*, note 55, supra.

59. *Arbuckle Abstract Co. v. Scott*, see note 55, supra; *Robinson v. State*, 1996 OK 145, ¶ 6, 916 P.2d 1390; *Lone Star Helicopters, Inc. v. State*, see note 55, supra.

60. *State ex rel. Oklahoma Dept. of Mines v. Jackson*, 1997 OK 149, ¶ 12, 950 P.2d 306 [Exhaustion of remedies doctrine was not available as a bar where issues tendered were not cognizable before the administrative agency.].